768 F.2d 34
 19 Fed. R. Evid. Serv. 211
 Benjamin F. RAYSOR, Jr., Appellant,
v.
PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Judith Fox,
personally and as owner of Cornucopia Health Foods Store,
Sergeant M. Vergura and Officer N.W. Simpson of the Port
Authority Police Force, Nature Bar Health Foods, Inc., Larry
Fox and Larry Manheimer, Appellees.
 No. 1148, Docket 84-7658.
 United States Court of Appeals,
Second Circuit.
 Argued May 14, 1985.
Decided July 15, 1985.
 
 Benjamin F. Raysor, Jr., pro se.
 Ellen M. Coin, New York City (Shapiro, Mortman, Schwartz & Greene, Harvey M. Greene, New York City, of counsel), for appellees Judith Fox, Nature Bar Health Foods, Inc. and Larry Fox.
 Arthur P. Berg, New York City (Patrick J. Falvey, Gen. Counsel, Port Authority of New York and New Jersey, New York City, of counsel, Kathleen M. Collins, Manuel Kasson, New York City, on brief), for appellees Port Authority, Sergeant Vergura and Officer Simpson.
 Before LUMBARD, OAKES and CARDAMONE, Circuit Judges.
 OAKES, Circuit Judge:
 
 
 1
 Five years ago, Benjamin F. Raysor, Jr., was arrested for possession of stolen property while seeking to return two bottles of vitamin pills without the sales slip to the Cornucopia Health Foods Store ("Cornucopia"), located in the World Trade Center. After the case against Raysor was dismissed on the prosecutor's motion for want of proof, Raysor brought suit for violation of his civil rights under 42 U.S.C. Sec. 1983 (1982) and for false arrest and malicious prosecution under state law against Judith Fox, both personally and as owner of Cornucopia; the store's other owners, Ms. Fox's husband Larry Fox, Larry Manheimer, and Nature Bar Health Foods, Inc.; the two arresting officers, Officer Nathaniel Simpson and Sergeant Michael Vergura; and the officers' employer, the Port Authority of New York and New Jersey. After a jury trial, judgment was entered in the United States District Court for the Southern District of New York, Mary Johnson Lowe, Judge, in favor of Raysor on his state tort claims in the amount of $16, the approximate cost of the pills, against Sergeant Vergura, the chief arresting police officer. Raysor's section 1983 claim and all of his claims against the other defendants were either dismissed or decided in favor of the defendants. On appeal, we reverse and remand for a new trial because the verdict was inconsistent and the damages inadequate as well as inconsistent with the theory of relief sought, perhaps owing to deficiencies in the charge. We also reverse as to the dismissal of the tort claims against Officer Simpson and the Port Authority. We affirm the dismissal of the health food store defendants Judith Fox, Larry Fox and Nature Bar Health Foods, Inc.[1]
 
 
 2
 It was undisputed that on September 5, 1980, between 12:30 and 1:00 p.m., Raysor requested a refund for two bottles of vitamin tablets from defendant Judith Fox in her capacity as acting cashier for Cornucopia. Raysor had the vitamins in his possession but no sales slip, and a dispute arose between him and Ms. Fox.
 
 
 3
 Raysor and Ms. Fox related very different versions of their dispute at trial. Raysor claimed that Ms. Fox accused him of stealing and that they argued over ownership of the vitamin bottles. Ms. Fox denied either making any such accusation or arguing over ownership of the vitamins. Instead, she testified that she merely followed store policy by refusing to give a refund without proof of purchase, while Raysor cursed and threatened her without provocation, calling her a "bitch" and saying that if she were a man he would punch her in the face. These remarks Raysor in turn denied making. In addition, a pretrial stipulation and order stated that Raysor was never profane during the altercation and did not physically or orally menace or threaten anyone.
 
 
 4
 In any event, the dispute grew so heated that Ms. Fox called the Port Authority police, telling them, according to her testimony, "there's a man causing a ruckus who may or may not have taken vitamins. Please come up he's threatening me." Officer Nathaniel Simpson and Sergeant Michael Vergura responded.[2] According to Officer Simpson, the first to arrive on the scene, Ms. Fox told him the vitamin pills were her property. Simpson then asked Raysor to accompany him to the Port Authority police desk, downstairs in the World Trade Center, for questioning. Anxious to set matters straight, Raysor went willingly.
 
 
 5
 Shortly thereafter, the police also asked Ms. Fox to come downstairs for separate questioning. As Vergura recalled, Ms. Fox said that she had seen Raysor in the aisle, near the vitamin pills before he presented them for refund or exchange, that "the pills belong to the store, he didn't come in here with them pills," and that if Raysor would give the pills back she would not press charges. All witnesses agreed that when Vergura then told Raysor he was free to leave if he surrendered the vitamins, Raysor steadfastly insisted that the pills were his and that he was not going to give them up as a matter of principle. Vergura testified, in addition, that he relayed Raysor's position to Ms. Fox and she responded, "No, I put up with too much abuse, I'll let him walk, but he has to give the pills back." Ms. Fox, however, remembered saying, "I don't care about any vitamins, I just don't want the man to come back in the store and threaten me, and I do not want to press charges."
 
 
 6
 At this point Raysor was taken into custody, fingerprinted, photographed and incarcerated in a cell for several hours--he said five and Officer Simpson said three and one-half. Raysor's one telephone call was to a lawyer, a Mr. Greenidge, who came down to the police desk and told Simpson and Vergura that he had seen Raysor in Greenidge's World Trade Center office just before the incident took place and had noticed two bottles of pills in Raysor's briefcase, though according to the police he could not positively identify them as the two bottles from Cornucopia. In a rather curious approach to law enforcement, Sergeant Vergura told Greenidge, as Sergeant Vergura himself testified, that "the only way I could release [Raysor] is if [Greenidge] were absolutely positive that those were the pills in question," and that "unless he could prove to me beyond a doubt that those were the pills in question I would have to go through with the arrest which was already in progress."
 
 
 7
 Sometime after six o'clock, and after the officers had checked to find out that Raysor had no previous record of arrests or convictions, no outstanding warrants, and no apparent brushes with law enforcement, both officers signed a Desk Appearance Ticket ("DAT") charging Raysor with the offense of criminal possession of stolen property and instructing him to appear in court at 9:30 a.m. on October 22. Upon signing the DAT in acknowledgment of its receipt, Raysor was released. The police vouchered the two bottles of vitamins.
 
 
 8
 When the calendar in the state court was called, after continuances to November 6, 1980, the Assistant District Attorney moved to dismiss the case "in light of the fact that the People cannot sustain their burden of proof." Raysor, seeking redemption of what he considered his injured reputation, filed a motion pro se that same day to have the case prosecuted by indictment. As he explained to the somewhat surprised court, "My integrity and my honor have been impugned. I want to be completely vindicated." The court denied the motion.
 
 
 9
 Raysor brought suit for damages in federal court under 42 U.S.C. Sec. 1983 with pendent state claims for false arrest and malicious prosecution. The pro se plaintiff, of course, had not only a lack of trial experience and inability accurately to phrase questions; he also testified and had difficulty as a witness objecting to defense counsel questions. One of the defense attorneys attempted to instruct the witnesses on their duties and behavior, matters which are ordinarily for the trial judge, who quite properly was not reluctant to assert her authority. Another defense lawyer seemed unable to ask on direct examination anything but a leading question, somewhat to the court's consternation. In any event, before the case went to the jury the court dismissed the health food corporation, Manheimer, Mr. and Ms. Fox, and the Port Authority. The court also dismissed, for reasons that are not apparent, the false arrest and malicious prosecution claims against Officer Simpson, but then submitted the civil rights claim against both officers and the false arrest and malicious prosecution claims against Sergeant Vergura on special interrogatories. The jury found neither officer liable on the civil rights claim, but did find Sergeant Vergura liable for false arrest and malicious prosecution, though only in the sum of $16.00, some $.25 less than the cost of the two bottles of vitamin pills taken at the time of arrest. This appeal followed.
 
 
 10
 It is clear that the section 1983 claim against the Port Authority was properly dismissed because there was no showing that the injury was caused by execution of a custom or policy of the Port Authority, as required by Monell v. Department of Social Services, 436 U.S. 658, 691-95, 98 S.Ct. 2018, 2036-38, 56 L.Ed.2d 611 (1978). But the actions for false arrest and malicious prosecution may proceed against the Port Authority on a theory of respondeat superior, Johnson v. Town of Colonie, 102 A.D.2d 925, 926, 477 N.Y.S.2d 513, 514 (1984), since New York and New Jersey have both waived the Port Authority's immunity from such suits, see N.Y.Unconsol.Laws Sec. 7101 (McKinney 1979). The Port Authority therefore should not have been dismissed on the state law claims.
 
 
 11
 The state law claims against Officer Simpson were dismissed because he made the arrest at Sergeant Vergura's order. Strangely, although the court properly recognized Simpson's potential liability under section 1983 both for making the arrest without a good faith belief "that the order imparted to him by Sergeant Vergura was a lawful order" and for knowingly making false or incomplete statements on the accusatory instrument, it ignored the general tort rule that an agent is not relieved of liability merely because he acted at the command of the principal, see Restatement (Second) of Agency Sec. 343 comments b, d (1958).[3] On retrial, Officer Simpson should be subject to liability on the state law claims as well as the civil rights claims.
 
 
 12
 On the other hand, the tort claims against Judith Fox were rightly dismissed. The evidence established that it was Sergeant Vergura who ordered the arrest, and that Judith Fox did not know about Raysor's arrest or about anything else that happened after she finished speaking with Sergeant Vergura. The sole testimony connecting her with the arrest was that of Sergeant Vergura, that she originally stated she "would let [Raysor] go if he gave the pills back," but when Raysor refused to do so she then said, "No, I put up with too much abuse, I'll let him walk, but he has to give the pills back." These statements are sufficiently equivocal--expressive of her desires both to be done with the whole thing and still not to let Raysor get away with it--as to fall short of a request that Raysor be arrested or prosecuted, the minimal action necessary to sustain a claim of false arrest or malicious prosecution. See, e.g., Rosario v. Amalgamated Ladies' Garment Cutters' Union, 605 F.2d 1228, 1248 (2d Cir.1979), cert. denied, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980), and cases cited therein (false arrest); Viza v. Town of Greece, 94 A.D.2d 965, 966, 463 N.Y.S.2d 970, 971 (1983) (malicious prosecution). We also note the view of one New York Court that "[t]he law is clear that a defendant in a false arrest action will not be held liable for police detention unless it is shown that the police are not acting on their own volition but rather were carrying out the express directions or demands of the defendant." Smalls v. Board of Education, 114 Misc.2d 109, 117, 450 N.Y.S.2d 987, 992 (Civ.Ct.1982). While this may be overstating the law of New York, it at least demonstrates that the courts are fully aware of the principle that for a third-party defendant or complainant to be liable for false arrest by the police there has to be an unequivocal complaint or request to arrest. Dismissing the case against Judith Fox requires that the cases against Larry Fox and Nature Bar Health Foods, Inc. also be dismissed since their liability depends upon the doctrine of respondeat superior.
 
 
 13
 We come then to the question of damages. Not only are the damages awarded inadequate to compensate even for the loss of personal property, they are inadequate to compensate for the "loss of time, ... physical discomfort or inconvenience, ... mental suffering, humiliation" and the like which are involved in a case of false arrest and malicious prosecution. See W. Prosser, Handbook of the Law of Torts 43 (4th ed. 1971). We suspect that the charge, which Raysor argues was inadequate, did indeed inhibit the jury. The admonition not to award "speculative damages" was, of course, correct, as was the court's instruction that Raysor had "the burden of proof with respect to the nature and extent of his injuries, and with respect to his resulting losses." But the court should have made it clear to the jury that it could award monetary damages--the amount necessarily arbitrary and unprovable--for the intangibles which we have referred to above. Even more importantly, the jury should also have been informed that the fact of confinement in and of itself is enough to establish a claim for nominal damages. Karfunkel v. Compagnie Nationale Air France, 427 F.Supp. 971, 976 (S.D.N.Y.1977). New York cases uphold awards of up to $10,000 for every short periods of confinement without proof of actual damages. See, e.g., Hallenbeck v. City of Albany, 99 A.D.2d 639, 472 N.Y.S.2d 187 (1984) ($10,000 for three hours); Woodard v. City of Albany, 81 A.D.2d 947, 439 N.Y.S.2d 701 (1981) ($7,500 for five hours); Guion v. Associated Dry Goods Corp., 56 A.D.2d 798, 393 N.Y.S.2d 8 (1977) ($10,000 for three hours), aff'd, 43 N.Y.2d 876, 403 N.Y.S.2d 465, 374 N.E.2d 364 (1978).
 
 
 14
 Since we are reversing and remanding as to the Port Authority and Officers Simpson and Vergura, we have a few additional comments to make with respect to the conduct of a second trial. In the first place, the charge should reflect the relationship between the tort claims and the section 1983 claim. Because the same four elements must be proved for both the tort of malicious prosecution and the related section 1983 violation, see Singleton v. City of New York, 632 F.2d 185, 195 (2d Cir.1980) ("The essence of the Sec. 1983 claim is not alleged groundless prosecution, without which there would not be any basis for the claim."), cert. denied, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); Angel v. Kasson, 581 F.Supp. 170, 175 & n. 9 (N.D.N.Y.1983), the claims are virtually identical. Raysor's tort action against the police officers for false arrest is also substantially the same as his section 1983 action. A warrantless arrest is presumptively unlawful under New York law, see Broughton v. State, 37 N.Y.2d 451, 457-58, 373 N.Y.S.2d 87, 94-95, 335 N.E.2d 310, 315, cert. denied, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975); the plaintiff need not prove either malice or want of probable cause. Rather, the defendant has the burden of proving that the arrest was authorized under N.Y.Crim.Proc.Law Sec. 140.10 (McKinney 1981), which requires "reasonable cause," the equivalent of probable cause, see id. Practice Commentary at 177. Proof of subjective good faith does not shield an officer from tort liability for an unlawful arrest, though it may mitigate damages. Broughton, 37 N.Y.2d at 458-59, 373 N.Y.S.2d at 95, 335 N.E.2d at 315; Smith v. County of Nassau, 34 N.Y.2d 18, 23-24, 355 N.Y.S.2d 349, 353, 311 N.E.2d 489, 492-93 (1974). Similarly, a deprivation of liberty without "reasonable cause" is a section 1983 violation as to which the defendant bears the burden of proving reasonableness, and a subjective good faith belief in the legality of the arrest is not enough--at least at this stage of Supreme Court decisionmaking--to escape section 1983 liability. See, e.g., Harlow v. Fitzgerald, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982); Scheuer v. Rhodes, 416 U.S. 232, 247-48, 94 S.Ct. 1683, 1691-92, 40 L.Ed.2d 90 (1974); McElveen v. County of Prince William, 725 F.2d 954, 956-57 (4th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 88, 83 L.Ed.2d 35 (1984). Since there is no question that the arresting officers acted under color of state law, if they made a false arrest then they also violated section 1983. Thus, in this case a finding of liability for either false arrest or malicious prosecution would also require a finding of liability under section 1983.
 
 
 15
 On retrial, two evidentiary errors should also be avoided. Judith Fox's counsel was able to bring out through her testimony her religion, her long-term marriage, and her husband's and her support of their daughter at the University of Michigan and son at the University of South Florida. While some personal information is admissible to show Ms. Fox's background, this particular information serves merely to bolster her credibility without being relevant to the issues of liability and damages. Unless her credibility is attacked, testimony of this type is to be avoided on retrial. See J. Moore & H. Bendix, 10 Moore's Federal Practice Secs. 401.03, 401.03 (2d ed. 1985).
 
 
 16
 Also to be avoided are questions forcing Raysor to testify about his apparently extensive pro se litigation on other matters. Raysor's litigiousness may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant. See McCormick on Evidence Sec. 196, at 578-80 (3d ed. 1984). The trial court has a duty to prevent exploitation of this prejudice, particularly if Raysor is so unwise on retrial as again to represent himself. We trust, however, that Raysor knows by now the truth of the old proverb, "He who is his own lawyer has a fool for a client."
 
 
 17
 Judgment affirmed in part and reversed in part and cause remanded for further proceedings in accordance with this opinion.
 
 
 
 [1]
 Plaintiff does not appeal the dismissal of defendant Larry Manheimer
 
 
 [2]
 Sergeant Vergura had been promoted to lieutenant by the time of trial, but to avoid confusion we will refer to him throughout as sergeant
 
 
 [3]
 Comment b provides in pertinent part:
 An agent who ... arrests another ... is not excused by the mere fact that he is acting as an agent. If, however, a reasonable belief in the existence of facts causes an act to be privileged, and a command by the principal gives the agent reason to believe in the existence of such facts, such command gives him a privilege to do the act. Thus, if a principal directs an agent to institute criminal proceedings against another, although the command does not of itself justify the agent in so doing, if from the command the agent has reasonable grounds for believing the other guilty of the crime, the agent is not guilty of malicious prosecution.
 Comment d provides in pertinent part:
 An agent who assists another agent or the principal to commit a tort is normally himself liable as a joint tort feasor for the entire damage. Thus, ... deputy sheriffs who take part in an unlawful arrest ... are subject to liability together with those for whom they act, except where their good faith creates a privilege in them to act.