**Willa REID, Plaintiff,**

v.

**The CITY OF NEW YORK, P.O. Richard Dorsty, P.O. George Farley and P.O. John Rohan, Defendants.**

No. 88 CV 1573.

United States District Court,
E.D. New York.

April 17, 1990.

Colin A. Moore, Brooklyn, N.Y., for plaintiff.

Peter L. Zimroth, Corp. Counsel, New York City, for defendants (Victoria A. Butler, of counsel).

## MEMORANDUM AND ORDER

### NICKERSON, District Judge.

Plaintiff Willa Reid brought this action under 42 U.S.C. § 1983 against the City of New York (the City) and three uniformed New York city police officers. The second amended complaint alleges that defendants violated her rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments by assaulting, falsely arresting, and maliciously prosecuting her. The second amended complaint also asserts pendent state law claims. Jurisdiction is based on 28 U.S.C. § 1343(a)(3).

Defendants move for partial summary judgment. The motion seeks to dismiss (1) all Federal and State law claims against all defendants to the extent the claims are for false arrest and malicious prosecution, (2) the Federal and State claims for assault against the City and defendant Police Officer George Farley and (3) the State law claims for assault against the other two police officer defendants, Richard Dorsty and John Rohan.

Defendants Dorsty and Rohan have not moved to dismiss the Federal claims against them in so far as they claim an assault.

Many of the facts are undisputed. Where there is disagreement, the court adopts plaintiff's version for purposes of the motion.

On the morning of February 21, 1987, defendant George Farley and two other police officers, not named as defendants, responded to a complaint made by Faye Lewis. She claimed that her boyfriend Wayne Aljoe had assaulted her and abducted their child. The officers, joined by defendant Dorsty met Lewis in Jamaica, Queens, and proceeded to Aljoe's residence, a two story single family house, where they met plaintiff Willa Reid, the mother of Aljoe. Lewis and three officers walked into a bedroom, as did plaintiff, holding the Lewis' baby in her arms. She put the baby down on one of the two beds. Lewis picked up the child and began to gather the baby's things.

Aljoe, 250 pounds and over six feet tall, entered the room. He went over to the dresser, took a "baby wipe," and sat down on a bed. One of the officers commented, "Let's get him boys." As they walked over to arrest him, plaintiff turned her head away "to avoid seeing the handcuff going on." At that point, Lewis cried, "Don't do him like that—he didn't do anything—Leave him alone."

Plaintiff testified at her deposition that she saw Aljoe fall and the officers hitting him with their hands. When plaintiff began to cry, one of the officers "in a calm way" asked her to leave the room. She refused and two officers continued to hit Aljoe.

An officer, apparently defendant Dorsty, came into the room, his nightstick raised. Plaintiff begged him not to hit Aljoe. She rushed between Dorsty and Aljoe, and stood in front of Dorsty waiving her arms. Dorsty grabbed her by the hair, pushed her over onto the bed, and shoved her head into the mattress. She attempted to get up. After several seconds, he let her go and stepped back. When she looked up, she realized more officers, including defendant John Rohan, had arrived.

Plaintiff pushed herself up from the bed, went over to Dorsty and asked to see his badge number. One officer, apparently Rohan, grabbed the back of her dress and pulled her back. As she turned and faced him, he slapped her on the cheek, but not with a hard blow. She responded by slapping the officer in the face.

Rohan then grabbed her by the hair, pulling her out of the bedroom door. A second officer pushed her from behind, and a third officer helped by dragging her by the dress. She was pushed into the wooden stair railing, dragged into another bedroom, and pushed down onto a bed. Several minutes later, Rohan took her down the stairs to the police station.

Defendant Farley states in his affidavit that during much of the incident he was struggling to handcuff Aljoe and that, when Aljoe was finally in custody, the plaintiff was no longer in the room.

a) *False Arrest and Malicious Prosecution Claims*

■ To prove a constitutional violation under 42 U.S.C. § 1983 for false arrest and malicious prosecution, plaintiff must establish the elements of the state law torts of false arrest or malicious prosecution and show that the defendants were acting under color of state law. *See Raysor v. Port Authority of New York and New Jersey,* 768 F.2d 34, 40 (2d Cir.1985), *cert. denied* 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986).

■ The elements of a false arrest claim are that 1) a defendant intended to confine the plaintiff, 2) plaintiff was conscious of the confinement and did not consent to it, and 3) the confinement was not otherwise privileged. *See Broughton v. State,* 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93, 335 N.E.2d 310, 314 (1975), *cert. denied sub nom. Schanbarger v. Kellogg,* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975).

■ While an arrest without a warrant is presumed unlawful, the arresting officer can show legal justification by proving the arrest was based on reasonable or probable cause. *See Jaroslawicz v. Seedman,* 528

F.2d 727, 732 (2d Cir.1975); *Benjamin v. United States,* 554 F.Supp. 82, 85 (E.D.N. Y.1982). Probable cause exists "when [an officer] has reasonable grounds, in light of the circumstances of the moment as viewed through his eyes for belief" that a crime was being committed and that the person before him committed it. *See Bell v. United States,* 254 F.2d 82, 87 (D.C.Cir.1958), *cert denied,* 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113; *Cf.* New York Criminal Procedure Law § 70.10 (defining reasonable cause).

■ A person is guilty of resisting arrest when he or she "intentionally prevents or attempts to prevent a police officer" "from effecting an authorized arrest of himself or another person." New York Penal Law § 205.30. To "attempt[ ] to prevent" an arrest, a person need not use physical force, but need merely engage in "some conduct with the intent to prevent the officer from effecting an arrest." *See People v. Blandford,* 37 A.D.2d 1003, 325 N.Y.S.2d 486, 487 (3d Dept.1971). Plaintiff admitted in her deposition that she interfered in her son's arrest by stepping in front of Dorsty and waiving her arms, as the officer rushed to assist in the arrest.

■ Because Aljoe pled guilty to resisting arrest and did not appeal, his arrest was "authorized" within the meaning of § 205.30. *Cf. Broughton v. State,* 37 N.Y.2d at 458, 373 N.Y.S.2d at 95, 335 N.E.2d at 315 ("conviction which survives appeal would be conclusive evidence of probable cause" to arrest). Thus, Dorsty had probable cause to arrest the plaintiff for resisting the authorized arrest of her son.

■ Moreover, plaintiff hit Rohan. She admits her action was not in self defense and was intentional. Even if he were also liable for assault for slapping the plaintiff, Rohan had probable cause to arrest plaintiff for assault.

■ The elements of a malicious prosecution claim are that 1) defendant either commenced or continued a criminal proceeding against her, 2) the proceeding terminated in plaintiff's favor, 3) it was not based on probable cause and 4) was

brought because of defendant's actual malice. *See Raysor, supra,* 768 F.2d at 39; *Colon v. City of New York,* 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248, 1250 (1983). For the reasons stated above, defendants had probable cause to prosecute plaintiff for assault and resisting arrest.

Defendants have shown that plaintiff's Federal and State claims for false arrest and malicious prosecution are insufficient.

### b) *Federal Claim against Farley for Assault*

The affidavits of the officers assert that defendant Farley, preoccupied with arresting and subduing Aljoe, never touched the plaintiff. Plaintiff does not dispute this.

■ It is true that a law enforcement officer "has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988). To be held liable, however, the officer must have had "a realistic opportunity to attempt to prevent" the harm done to the plaintiff. *Id.* Plaintiff has submitted no evidence that Farley was aware of any wrongdoing or could have aided plaintiff had he wished to help. The Federal claim against him is insufficient.

In plaintiff's brief she suggests that under Fed.R.Civ.P. 15(a) she should be able to add Aljoe as a plaintiff, claiming Aljoe was assaulted by Farley in violation of his constitutional rights. Aljoe has had several years to move for joinder and has not done so to date. In any event, his claim is now barred by the three year statute of limitations.

### c) *Pendent State Claims for Assault against Defendants Farley, Dorsty and Rohan*

The defendants Farley, Dorsty, and Rohan further argue that the state tort claim for assault is time barred.

■ When adjudicating state law claims in federal court, the court applies the New York's limitations period, including the state's rules for tolling. *See Per-*

*sonis v. Oiler,* 889 F.2d 424 (2d Cir.1989) (limitations period tolled when summons served); *Morse v. Elmira Country Club,* 752 F.2d 35, 38 (2d Cir.1984); *Cf. Poulos v. Wilson,* 116 F.R.D. 326, 329–330 (D.Vt. 1987) (summons tolls period under Vermont law).

■ Under New York law, claims for assault must be brought within one year from the day the action accrued, N.Y.Civ. Prac.Law and Rules § 215(3), namely, when the assault is complete. *See Colena v. City of New York,* 68 A.D.2d 898, 414 N.Y.S.2d 220, 222 (S.Ct., 2d Dept.1979). The limitations period is tolled at the time the claim is "interposed," generally when "the summons is served upon the defendant." C.P.L.R. § 203(b). Because the assault claim accrued on February 21, 1987, the day of the incident, and none of the officers was served before December 29, 1988, over a year after the claims accrued, plaintiff's assault claim is barred.

### d) *Liability of New York City*
#### i) Under § 1983

■ The court may not hold the City vicariously liable for damages under 42 U.S.C. § 1983 for the actions of its employees. *See Monell v. N.Y.C. Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Nor can the City be held liable for a single act of police misconduct unless "its policies are the 'moving force [behind] the constitutional violation.'" *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989), *citing Monell,* 436 U.S. at 694, 98 S.Ct. at 2037, and *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981).

■ A municipal policy condoning or encouraging police misconduct may be inferred from the police department's failure to train, supervise, or discipline its officers. *Id.* 109 S.Ct. at 1204–1206 (failure to train); *Fiacco v. City of Rensselaer,* 783 F.2d 319, 326 (2d Cir.1986), cert. denied, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987) (failure to supervise); *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983) (failure to

discipline). But the fact finder may not draw such an inference unless the need for training, supervision, or discipline is "so obvious and the inadequacy so likely to result in a violation of constitutional rights that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need," *see Canton,* 109 S.Ct. at 1205, and the identified deficiency is "closely related to the ultimate injury." *Id.* at 1206.

The City has submitted the affidavit of DeForrest Taylor, Chief of the Personnel Bureau of the New York City Police Department, outlining in detail the extensive procedures used by the police department to hire, train, supervise and discipline its officers.

Plaintiff disputes the worth of these procedures and submits several items said to show that the City had a policy that condoned police brutality: 1) *The Report on Hearings in New York City on Police Misconduct,* Sub–Committee on Criminal Justice (Sub–Committee), Committee on the Judiciary, House of Representatives, 98th Cong, 2d Sess. (1984) (Conyers' Report) 2) the statement of Congressman Major Owens before the Sub–Committee, July 18, 1983; 3) testimony given by the Reverend Herbert Daughtry, Chairman National Black United Front, before the Sub–Committee, July 18, 1983; 4) an unpublished article by plaintiff's counsel, Colin A. Moore, about police violence in the City of New York; 5) Moore's "expert" affirmation that there is a custom or policy to permit brutality; and 6) statistics from *The Annual Report of the Civilian Complaint Investigative Bureau* for 1977–1987, and *The Firearm Discharge Assault Report* for 1977–1987.

In *Anderson v. City of New York,* 657 F.Supp. 1571, 1577–1580 (S.D.N.Y.1987), the court found the Conyers' Report not sufficiently trustworthy to fall within the "public records and reports" exception to the hearsay rule. *See* Fed.R.Evid. 803(8), 802; *see also Ismail v. Cohen,* 706 F.Supp. 243, 254 (S.D.N.Y.1989). Moreover, that report, based on hearings held in 1983 and covering 1979 through 1983, hardly seems "timely" with respect to the 1987 incident at issue in this case. The court cannot treat the report as admissible evidence. The testimony by Reverend Daughtry and Congressman Owens, and the unpublished article by plaintiff's counsel are all hearsay. No exception to the hearsay rule makes them admissible. Fed.R.Evid. 802, 803.

Plaintiff's counsel asserts that he is a sufficient "expert" on the workings of the Police Department to testify that the City does have a policy to permit brutality. Under Fed.R.Evid. 702, if "specialized knowledge will assist the trier of fact to" "determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

█ Counsel states that he has represented over 100 plaintiffs on claims of police brutality, has frequently lectured on police misconduct at college campuses, and has on six occasions testified on police brutality before government entities. Yet his trial experience, even if supplemented with speaking engagements, does not make him an expert regarding the City's policy toward training and supervising its officers. He does not purport to have witnessed training or supervision or to have been present when incidents occurred from which an improper custom or policy could be inferred.

█ Moreover, even if he were an expert, the ethical rules would prohibit his appearance as both an advocate and witness for his client. *See* DR 5–102(A), New York Judiciary Law (Appendix).

Counsel's affidavit does include both documented and undocumented statistics that he claims demonstrate such a policy. These statistics are not sufficient to create a reasonable inference of a policy condoning police brutality. Relying on *The Annual Report of the Civilian Complaint Investigative Bureau* for 1977–1987, counsel notes that the number of civilian complaints has escalated from 3277 in 1977 to 4762 in 1987. Counsel does not mention that the method for tabulating the number of complaints changed in March 1984 when

the government for the first time included as "complaints" allegations of discourtesy or less serious conduct. Adjusted to account for this change in recording, the statistics suggest, if anything, that there has been a significant reduction in the number of complaints filed over the last 12 years. In addition, counsel offers no evidence as to which of the complaints filed had merit. The court thus has no basis to infer an improper policy.

Furthermore, the statistics from the Fire Arm Review Board that list the number of people killed per year from 1977–1987 by officers and from the Medgar Evers Center that lists the number of minorities killed by officers are not sufficient to make a *prima facie* case. Without the facts of the individual cases and evidence as to how the City responded to each incident, there is an insufficient basis to draw the inference counsel suggests.

Plaintiff has not submitted sufficient admissible evidence to establish a municipal policy condoning the use of police brutality. The § 1983 claim against the City is dismissed.

### ii) Pendent Claims

Because the City and the plaintiff are not of diverse citizenship, the court must determine whether there is "pendent-*party* jurisdiction, that is, jurisdiction over parties not named in any claim that is independently cognizable by the federal court." *Finley v. U.S.*, — U.S. —, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593 (1989) (emphasis in original).

In *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), the Supreme Court held that a municipality could not be sued as a pendent party to an action brought under 42 U.S.C. § 1983. To permit suit would be inconsistent with Congress' intent to exclude a municipality from liability under the statute. Two years later, after the Supreme Court recognized municipal liability under § 1983, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), courts began to question the continuing validity of *Aldinger*'s categorical ban. *See, e.g., O'Connor v. City of Chica-*

*go*, 1989 WL 15976, 1989 U.S.Dist.Lexis 1726 (N.D.Ill. Feb. 21, 1989) and cases cited.

However, last year in *Finley*, the Court did not question *Aldinger* and instead emphasized that " 'neither the convenience of the litigants nor considerations of judicial economy can suffice to justify the extension of the doctrine of ancillary jurisdiction.' " 109 S.Ct. at 2008, *citing Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 376, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978). In recent cases, courts have rejected the contention that municipalities are proper pendent parties under § 1983. *See, e.g., Hill v. City of Chicago, et al.*, 1990 WL 16243, 1990 U.S.Dist.Lexis 1526 (N.D.Ill. Feb. 12, 1990); *Alexander v. Jefferson Parish, et al.*, 1990 WL 11365, 1990 U.S.Dist.Lexis 1326 (E.D.La. Feb. 6, 1990); *Fleming v. D.C., et al.*, 1989 U.S. Dist.Lexis 11796 (D.C.D.C. Oct. 5, 1989).

█ This court concludes that, by establishing liability only against a "person" who "subjects, or causes to be subjected, any citizen" to the "deprivation of rights, privilege, or immunities secured by" federal law, 42 U.S.C. § 1983 and 28 U.S.C. § 1343(a)(3) do not affirmatively grant pendent-party jurisdiction over the City, which is not liable for such deprivation. *Aldinger, supra; Cf. Finley, supra*, 109 S.Ct. at 2009; *Stallworth v. City of Cleveland*, 893 F.2d 830, 838 (6th Cir.1990) (no pendent party jurisdiction under 42 U.S.C. § 1983 over state law claim of loss of consortium).

The plaintiff may proceed on his excessive force claim pursuant to 42 U.S.C. § 1983 against defendants Dorsty and Rohan. All other claims are dismissed.

So ordered.