**John HAUSSMAN, Plaintiff,**

v.

**E.S. FERGUS, John Doe, "John" Holmes, Richard Roe, Two Other Defendants as Yet Unknown and J.C. Mondello, Defendants.**

No. 91 Civ. 7443 (PKL).

United States District Court, S.D. New York.

July 27, 1995.

Maher, Brofman & Wolff, P.C., Purchase, (Charles S. Brofman, of counsel), for plaintiff.

Dennis C. Vacco, Atty. Gen., New York City (June Duffy, of counsel), for defendants.

### OPINION AND ORDER

LEISURE, District Judge:

This is an action brought by John Haussman ("Haussman") against E.S. Fergus ("Fergus"), John Doe ("Doe"), "John" Holmes ("Holmes"), Richard Roe ("Roe"), J.C. Mondello ("Maldonado")[1] and two other unknown defendants. Plaintiff brings the instant action pursuant to 42 U.S.C. § 1983, and seeks recovery for violation of his constitutional rights by defendant police officers. Plaintiff alleges that he was arrested and

1. Plaintiff apparently mistakenly named in his complaint J.C. Mondello when he intended to name John C. Maldonado.

searched without probable cause, punished without due process, confined, and prosecuted by defendants. Defendant Fergus now moves for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. Alternatively, defendant Fergus moves for an order dismissing the action against him on the grounds of qualified immunity. Defendants Holmes and Maldonado move for summary judgment on the grounds that plaintiff has failed to demonstrate their personal involvement. Finally, Richardson moves for summary judgment based on the fact that he is not a named defendant and has not been served with a copy of the summons and complaint.[2] For the reasons stated below, defendants' motions are granted.

## BACKGROUND

Viewing the facts in the light most favorable to the non-movant, as this Court must on the instant motion, they are as follows. On October 22, 1991 at approximately 11:00 p.m., plaintiff, a twenty-three year old resident of Putnam County, New York, met George Divine ("Divine") and drove him to a restaurant and grill named Kelties Bum Steer ("Kelties"), located in Brewster, New York. *See* Affidavit of John Haussman, sworn to on June 1, 1995 ("Haussman Aff."), at ¶¶ 1, 3. Haussman, with Divine in the passenger seat, travelled on Route 6 in Putnam County through the town of Brewster and over to Route 121, where Kelties is located. *Id.* at ¶ 3, 4. When Haussman pulled into the parking lot of Kelties, defendants Richardson and Fergus were already in the parking lot in their police car.[3] *Id.* at ¶ 5.

Haussman states that upon parking his vehicle, two New York State Troopers approached his car. Fergus approached his side of the vehicle, while Richardson approached the passenger side. *See* Haussman Aff. at ¶ 5. Haussman was then ordered to perform a series of field sobriety tests. *Id.* at ¶ 7. Plaintiff was arrested for driving while intoxicated, handcuffed, and brought to the police barracks in Brewster, New York ("the Barracks"). *Id.* at ¶¶ 7, 8. Upon arriving at the Barracks, at approximately midnight, plaintiff was shackled to a bench. *Id.* at ¶ 10. At roughly 1:00 a.m., plaintiff was given an alcosensor test, which indicated that he had no alcohol in his system. *Id.* at 10. Defendant Fergus then indicated that he believed Haussman to be on drugs and searched him. *See* Haussman Aff. at ¶¶ 10, 11. Fergus withdrew Haussman's wallet, removed some condoms stored there, and passed them around the room to two or three other officers. *Id.* at ¶ 11. Defendants Fergus and Holmes began taunting plaintiff and using racial epithets.[4] *Id.*

Fergus again accused Haussman of having taken drugs and checked his skin, nose, and mouth. *Id.* at ¶ 13. Fergus then checked plaintiff's blood pressure, took his temperature and pulse, and inspected his eyes with a pen light. *Id.* at ¶ 14. "This horrendous scene took half an hour." *Id.* Haussman was then ordered to provide a urine sample, and he complied.[5] *Id.* The urine sample tested negative for drugs.

At approximately 4:00–5:00 a.m., plaintiff was fingerprinted and was then again hand-

**2.** In light of the decision this Court reaches on the issues of probable cause for plaintiff's arrest and the existence of qualified immunity, it need not reach the question of whether defendant Richardson was properly brought into the instant action.

**3.** The Court notes that defendants dispute this assertion and contend that they first observed plaintiff driving on Route 121 and that they pulled into the parking lot of Kelties after plaintiff. This Court, however, "may conclude that the motion should be granted only if it can conclude that, with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable

juror would have been compelled to accept the view of the moving party." *Bradway v. Gonzales,* 26 F.3d 313, 317 (2d Cir.1994) (citation omitted).

**4.** Plaintiff is white and the officers involved are black.

**5.** Defendants contend that, at first, plaintiff could not produce the requested urine sample, and that failure was a major contributing factor to the amount of time plaintiff was required to remain at the Barracks. Plaintiff merely states, "I was ordered by Trooper Fergus to provide a urine sample. I complied." *See* Haussman Aff. at ¶ 14.

cuffed to the wall. *See* Haussman Aff. at ¶ 16. Finally, at around 7:00 a.m., plaintiff was given a ticket for driving while ability impaired by drugs and one for failure to dim his headlights and released.[6] *Id.*

In a separate incident, on October 23, 1991, plaintiff was again pulled over by New York State troopers, and his car was searched. *See* Haussman Aff. at ¶ 19. This stop and examination lasted about forty-five minutes. *Id.*

## DISCUSSION

### I. *The Standard for Summary Judgment*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991). Summary judgment "is appropriate only 'after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Thornton v. Syracuse Sav. Bank,* 961 F.2d 1042, 1046 (2d Cir.1992) (quoting *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552); *accord Irvin Indus., Inc. v. Goodyear Aerospace Corp.,* 974 F.2d 241, 245 (2d Cir.1992).

"In deciding whether to grant summary judgment all inferences drawn from the materials submitted to the trial court are viewed in a light most favorable to the party opposing the motion. The nonmovant's allegations are taken as true and it receives the benefit of the doubt when its assertions conflict with those of the movant." *Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992).

"Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Id.; accord Taggart v. Time, Inc.,* 924 F.2d 43, 46 (2d Cir.1991); *see also Lang,* 949 F.2d at 580 ("In determining how a reasonable jury would decide, the court must resolve all ambiguities and draw all inferences against the moving party."); *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991) ("Viewing the evidence produced in the light most favorable to the nonmovant, if a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate.").

The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.,* 477 U.S. at 249, 106 S.Ct. at 2511.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and of identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once a motion for summary judgment properly is made, however, the burden then shifts to the nonmoving party, which " 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)); *accord Brass v. American Film Technologies, Inc.,* 987 F.2d 142 (2d Cir.1993). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at

---

**6.** The criminal charges against Haussman were dropped, and the ticket for operating his vehicle with the high beams engaged was also dismissed. *See* Haussman Aff. at ¶ 18.

2510 (emphasis in original). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" *Delaware & Hudson Ry. Co. v. Conrail*, 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (citations and quotation omitted); *see also Gnazzo v. G.D. Searle & Co.*, 973 F.2d 136, 138 (2d Cir.1992) (the court must "consider the record in the light most favorable to the non-movant. However, the non-movant may not rest upon the mere allegations or denials of [her] pleading, but must set forth specific facts showing that there is a genuine issue for trial.") (quotation and citations omitted). The Court draws all reasonable inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented. *See, e.g., Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir.), *cert. denied*, 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987).

## II. *Probable Cause*

■■■ "The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right." *Golino v. New Haven*, 950 F.2d 864, 871 (2d Cir.1991). The constitutional tort of arrest without probable cause, pursuant to § 1983, is substantially similar to the tort of false arrest under New York State law. *See Hygh v. Jacobs*, 961 F.2d 359, 366

(2d Cir.1992), *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir.1991); *King v. Macri*, 800 F.Supp. 1157, 1161 (S.D.N.Y.1992). In New York, in order for a plaintiff to succeed on an action for false arrest, he must demonstrate that defendants were acting under color of law and that: "1) defendants intended to confine plaintiff, 2) plaintiff was conscious of the confinement and did not consent to it, and 3) the confinement was not otherwise privileged." *Reid v. New York*, 736 F.Supp. 21, 24 (E.D.N.Y.1990).[7] In the instant action, only the third element is in dispute.

■■■ While an arrest without a warrant is presumed unlawful, the arresting officer can show legal justification by proving the arrest was based on probable cause. *Id.* In other words, defendants can defeat a constitutional claim for false arrest by demonstrating that there was probable cause for the arrest.[8] *See, e.g., Reid*, 736 F.Supp. at 24; *Alberts v. New York*, 549 F.Supp. 227, 231 (S.D.N.Y.1982). Probable cause exists where officers "have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Golino*, 950 F.2d at 870. In the instant action, therefore, the question for this Court to consider is whether Fergus and Richardson had information sufficient to induce a reasonable person to believe that Haussman committed an offense.

■■■ Preliminarily, it should be noted that the validity of an arrest does not depend upon an ultimate finding of guilt or innocence. *See Pierson v. Ray*, 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). Rather, the soundness of the arrest hinges on the existence of probable cause at the time the arrest was made. "[P]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith

---

7. Damages may be awarded for false arrest only for the period from initial custody until arraignment. *See Hygh*, 961 F.2d at 366. In the instant action, there was no arraignment and the period of time that plaintiff was actually in custody lasted for about six hours. *See* Defendant Mem. at 16 n. 3.

8. "A claim for false arrest or false imprisonment as an unconstitutional deprivation of civil rights under 42 U.S.C. § 1983 may be established only if there was no probable cause to support the plaintiff's arrest and detention." *Simpson v. Saroff*, 741 F.Supp. 1073, 1077 (S.D.N.Y.1990) (Sweet, J.).

in relying on that information." *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994) (citation omitted). Probable cause is evaluated under an objective standard. *See Lindsey v. Loughlin,* 616 F.Supp. 449, 451 (E.D.N.Y.1985).

■ Defendants maintain that the arrest of Haussman was precipitated by his use of his high beams and his subsequent inadequate performance of the field sobriety tests administered by Fergus. Plaintiff contends that officers Fergus and Richardson could not have observed him driving on Route 121 with his high beams on because they were already in the Kelties parking lot when he arrived.[9] Plaintiff concedes, however, that there was a period of time when he was driving with his bright lights on, and that period includes when he pulled into the Kelties parking lot.[10] Consequently, this Court finds that there is no material dispute of fact as to whether defendant Fergus observed plaintiff driving with his high beams engaged.

■ Defendants note that a driver's failure to dim his headlights could indicate that the driver has used alcohol. *See* Memorandum in Support of Defendants' Motion for Summary Judgment, ("Defendant Mem.") at

6. Accordingly, defendants Fergus and Richardson had ample reason to approach plaintiff's vehicle as he parked in the Kelties parking lot.[11] Fergus and Richardson assert that, upon approaching Haussman, they each noticed that plaintiff's eyes were bloodshot and watery and that his speech was slurred.[12] *Id.* at 7. Richardson further avers that he detected the smell of alcohol. *Id.* Fergus conducted a series of field sobriety tests, and he asserts that plaintiff failed to complete any of the tests successfully. *Id.* at 8. Fergus then arrested Haussman.

■ Although Haussman claims to have passed all portions of the field sobriety test administered to him,[13] such a conclusory assertion is insufficient to place in dispute Fergus' assertion that plaintiff failed the test.[14] Fergus is a police officer highly trained in determining whether a person has taken drugs or has ingested alcohol, *see* Defendant Mem. at 3–6, whereas it is unclear on what experience or training plaintiff bases his assertion that he passed the sobriety tests. Moreover, plaintiff admits that he was unable to recite the alphabet backwards and that he was shaking and trembling when he was asked to keep one leg raised while standing on the other.[15] The Court also notes that

9. Plaintiff argues that all actions prompted by his alleged use of his high beams on Route 121 constitute actionable wrongs because defendants did not actually see him driving on Route 121. *See* Plaintiff Mem. at 6 ("Since the officers lacked probable cause to stop the plaintiff, all of the resulting acts by the troopers violated the plaintiff's constitutional rights."). Since the Court finds that defendants were justified in approaching plaintiff's car, this argument is unavailing.

10. Plaintiff states that "he had turned on his high beams right before he entered the parking lot of Kelties, the troopers were already situated in the parking lot." Plaintiff Mem. at 11.

11. This is true whether defendants spotted plaintiff's use of his high beams on Route 121 or when entering the parking lot. "A police officer may, in appropriate circumstances and in an appropriate manner, stop a person for purposes of investigating possibly criminal behavior, even though there is no probable cause to make an arrest." *United States v. Bold,* 19 F.3d 99, 102 (2d Cir.1994). "Even where a 'traffic violation ... was minor ... officers acted within their authority in stopping' a driver and indeed to make an arrest." *Indomenico v. Brewster,* 848

F.Supp. 1136, 1139 (S.D.N.Y.1994) (quoting *United States v. Scopo,* 19 F.3d 777, 781 (2d Cir.1994)). This Court further observes, "[i]t is reasonable for police to exercise greater leeway than otherwise, in stopping persons reasonably suspected of improper driving at the time of the stop." *Indomenico,* 848 F.Supp at 1139.

12. Apparently, plaintiff had been suffering from a cold for some days prior to October 23, 1991. *See* Defendant Mem. at 7.

13. He makes this assertion in his affidavit but never alludes to it in his memorandum of law. *See* Haussman Aff. at ¶ 7.

14. If such were the case, any plaintiff arrested for driving while intoxicated, who was later found not to have been intoxicated, could defeat a motion for summary judgment by simply asserting that, in his untrained opinion, he passed the original sobriety tests.

15. Plaintiff states that this was caused by the cold weather. Defendants assert that, even aside from the shaking, plaintiff was simply unable to keep one leg raised while standing on the other.

plaintiff could not have determined whether his own pupils were dilated, his eyes blood-shot and watery, or his eye movement uneven when following a pen,[16] as Fergus alleges. Finally, plaintiff also had a cold which could have produced other symptoms that a reasonable officer might have mistaken for signs of intoxication.

■ In sum, even taking as true plaintiff's allegations concerning the sobriety tests upon which he could have had some ability to estimate his performance,[17] defendants' assertions concerning the other sobriety tests are necessarily undisputed.[18] Consequently, this Court finds that Fergus and Richardson had knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.

Accordingly, this Court concludes that defendants had probable cause to arrest Haussman and to take him to the Barracks where an alcosensor test could be administered and Haussman could be tested for drug use.

■ Lastly, none of the conduct at the Barracks rises to the level of an infringement of constitutional rights. Certainly, administering an alcosensor test, testing plaintiff's urine for drugs, and handcuffing plaintiff, do not by themselves constitute a violation of plaintiff's constitutional rights.[19] In addition, the taunts, insults and racial slurs alleged to have been hurled at plaintiff by defendants, while reprehensible if true, do not comprise an infringement of constitutional guarantees.[20]

### III. Qualified Immunity

■ This Court, having concluded that probable cause existed for plaintiff's arrest, need not reach the issue of qualified immunity. Nevertheless, the Court briefly notes that police officers enjoy a qualified immunity from damage suits arising out of their official conduct.[21] See Anderson v. Creighton, 483 U.S. 635, 639–41, 107 S.Ct. 3034, 3038–40, 97 L.Ed.2d 523 (1987). "[W]hen qualified immunity is considered, the question of immunity remains, as it should, distinct from the question of probable cause." Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir.1990) (citation omitted). "The relevant question . . . is whether a reasonable officer could have believed [his or her conduct] to be lawful, in light of clearly established law and the information the . . . officers possessed." Anderson, 483 U.S. at

---

**16.** There is some discrepancy between the point of light that Haussman says that he was able to follow, see Haussman Aff. at ¶ 7, and the pen that defendants assert that plaintiff's eyes followed in an uneven manner, see Defendant Mem. at 8. The Court finds it to be immaterial, however, whether it was a pen or a light that plaintiff was told to track.

**17.** Specifically, plaintiff states that he was able to complete successfully the finger to nose test, the leg raise, and a forward recital of the alphabet. See Haussman Aff. at ¶ 7. The Court notes that although plaintiff also states that he was able to follow a flashlight as it moved from side to side, this conclusory assertion is inadequate to create a factual dispute. First, plaintiff could not have known how well his eyes followed the flashlight. Second, the point of the test in question is to detect uneven movements in the eyes and not simply to determine if a person can follow a light from one point to another.

**18.** Regarding these tests, plaintiff either does not contest his poor performance or has no information upon which to reach a conclusion concerning his performance.

**19.** The Court notes that in the instant case, plaintiff voluntarily acceded to the alcocensor and urine tests.

**20.** Offensive racial comments cannot form the basis of a § 1983 claim. See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir.1986); Wright v. Santoro, 714 F.Supp. 665, 666–67 (S.D.N.Y.) ("discriminatory statements reflecting racial prejudice not actionable under § 1983 where not shown to be connected with physical injury." (citation omitted)), aff'd, 891 F.2d 278 (2d Cir.1989); Zeno v. Cropper, 650 F.Supp. 138, 141 (S.D.N.Y. 1986) (Leisure, J.) ("the use of such language, no matter how abhorrent or reprehensible, cannot form the basis for a § 1983 claim.") (citation omitted).

**21.** A defense of qualified immunity should be decided at the earliest possible stage in a litigation, and it is a defense that often can and should be decided on a motion for summary judgment. See Castro v. U.S., 34 F.3d 106, 112 (2d Cir. 1994). On a motion for summary judgment on the ground of qualified immunity, defendant bears the burden of showing that as to that defense there is no genuine issue of material fact. Id.

641, 107 S.Ct. at 3040. The defense of qualified immunity is established when (1) at the time defendants acted, it was unclear whether plaintiff's asserted interests were protected by federal law, or (2) defendants could have reasonably believed that their actions did not contravene an established federal right. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 531–32 (2d Cir.1993); *Eng v. Coughlin*, 858 F.2d 889, 895 (2d Cir. 1988).[22]

■ This Court finds that it was objectively reasonable for Richardson and Fergus to have believed both that probable cause existed and that their actions did not contravene an established federal right.[23] Consequently, they are immune from liability under § 1983 on grounds of qualified immunity.

## IV. *Claims Against Holmes, Doe and Maldonado*

■ This Court cannot determine a § 1983 controversy unless there is a constitutional claim of sufficient substance to support federal jurisdiction. *See Hagans v. Lavine*, 415 U.S. 528, 536, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577 (1974); *Andrews v. Maher*, 525 F.2d 113, 116 (2d Cir.1975). In order to assert an entitlement to damages under § 1983, plaintiff must allege that each defendant was personally involved in the constitutional violation. *See McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Mukmuk v. Commissioner of Dep't of Correctional Services*, 529 F.2d 272 (2d Cir.), *cert. denied*, 426 U.S. 911, 96 S.Ct. 2238, 48 L.Ed.2d 838 (1976). Plaintiff must further allege a tangible connection between the acts of each defendant and the injuries he claims he sustained. *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir.1986).

■ This Court finds that plaintiff has failed to allege facts adequate to demonstrate that Holmes, Doe, and Maldonado deprived him of any constitutional rights. Haussman's only claim against Holmes seems to be that he was present at the Barracks when Fergus circulated the contents of Haussman's wallet. Having found that Fergus' actions did not rise to the level of a constitutional violation, this Court now further finds that Holmes' misdeeds do not constitute a violation of plaintiff's constitutional rights.

"The plaintiff withdraws all allegations of Civil Rights violations against Trooper Maldonado." Plaintiff Mem. at 14.[24] Accordingly, this Court need not reach Maldonado's motion for summary judgment.

■ Lastly, having determined that the instant action should be dismissed as to all the other named defendants, this Court also dismisses as to defendant John Doe. Even after the completion of discovery, plaintiff is unable to ascertain the identity of the defendant named as John Doe. In addition, the violation alleged to have been perpetrated by Doe arises out of an incident entirely separate from that for which the other defendants are accused.[25] Accordingly, at this stage of the litigation, this Court grants Doe's motion for summary judgment without prejudice to plaintiff's ability to renew his claim if he is able to establish a causal connection between an actual police officer and his purported injury.

## CONCLUSION

For the reasons stated above, defendants' motions for summary judgment are granted. This Court finds that officers Fergus and Richardson had probable cause to arrest

---

**22.** "[W]hen reasonable officers could disagree as to whether probable cause exists, the immunity defense is available." *Weg v. Macchiarola*, 995 F.2d 15, 18 (2d Cir.1993) (citation omitted); *Chayo v. Kaladjian*, 844 F.Supp. 163, 167 (S.D.N.Y.1994) (Leisure J.).

**23.** Certainly officers of reasonable competency could disagree on whether the probable cause test was met, and such showing is sufficient to imbue defendants with qualified immunity. *See Golino*, 950 F.2d at 870.

**24.** Apparently, Maldonado was on vacation during the time period in which plaintiff alleges that J.C. Mondello stopped and searched his car. *See* Defendant Mem. at 27.

**25.** Plaintiff alleges that on November 9, 1991, Doe stopped his car and unlawfully searched it for approximately forty-five minutes.

plaintiff and that they are shielded by qualified immunity. This Court further finds that plaintiff has failed to allege facts sufficient to implicate either officer Holmes or Maldonado in conduct comprising a constitutional violation. Finally, this Court finds that, on the present record, this action should be dismissed as to John Doe and as to the two other unknown defendants. Accordingly, this Court dismisses plaintiff's action in its entirety.

**SO ORDERED.**