Maria CASTRO, Plaintiff–Appellant,

v.

UNITED STATES of America, Don Abrams, Jason Davs, Daniel Bologna, Defendants–Appellees.

No. 1516, Docket 93–6344.

United States Court of Appeals, Second Circuit.

Argued April 20, 1994.

Decided Sept. 2, 1994.

Robert J. Krys, Amsterdam, NY, submitted a brief for appellant.

Richard A. Olderman, Dept. of Justice, Washington, DC (Frank W. Hunger, Asst. Atty. Gen., Gary L. Sharpe, U.S. Atty., Barbara L. Herwig, Attorney, Appellate Staff, Washington, DC, on the brief), for appellee.

Before: OAKES, KEARSE, and MAHONEY, Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff Maria Castro appeals from a judgment of the United States District Court for the Northern District of New York, Thomas J. McAvoy, *Judge,* dismissing her claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (*"Bivens"*), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671–2680 (1988), for damages resulting from a narcotics raid directed at her apartment by mistake. The district court, emphasizing that the complaint alleged that defendants' actions were negligent, and finding that defendants had qualified immunity, dismissed the complaint pursuant to Fed.R.Civ.P. 12(b)(6)

on the ground that it failed to state a claim on which relief could be granted. On appeal, Castro contends that the district court erred in concluding that she had not stated a claim. For the reasons below, we agree, and we vacate the judgment and remand for further proceedings.

## I. BACKGROUND

The present suit concerns a narcotics raid conducted by federal and local officers on October 29, 1990, on Castro's home in Amsterdam, New York. The individual defendants are Jason Davs (*sic*—hereafter "Daus") and Don Abrams, who were agents of the United States Drug Enforcement Administration ("DEA"), and Daniel Bologna, who was an agent of the United States Customs Service (collectively the "federal agents").

### A. The Events According to the Complaint

On the evening of October 29, 1990, Castro, an elderly widow, was at home in her Amsterdam apartment when the individual defendants, without a warrant and without warning, broke into her apartment. The officers searched Castro for a weapon and proceeded to search her apartment, overturning furniture, removing mattresses, and emptying containers. After 15–20 minutes, the officers left, realizing that they had entered the wrong apartment.

Castro alleged that, as a result of these events, she "became frightened, experienced heart palpitations and was subjected to extreme embarrassment, humiliation and social opprobrium" (Complaint ¶ 22), and that she "lost her peace of mind and has suffered greatly" (*id.* ¶ 23).

The complaint alleged that "the activity of defendants arose out of the negligent and wrongful execution of their acts [ ]at the home of the plaintiff, rather than at the correct home where the entry and search was [*sic* ] supposed to occur" (*id.* ¶ 11); that "solely through the negligence and carelessness of defendants did their actions arise and were carried out in the entry and searching of the wrong home" (*id.* ¶ 12); and that "the home/apartment of plaintiff was improperly

identified by defendants in the pursuit of the search and seizure" (*id.* ¶ 19).

Castro initially brought suit in 1991 against the United States, Montgomery County, New York, and the county sheriff. Her complaint against the United States was dismissed because she had not complied with the FTCA's administrative exhaustion requirements. Castro settled her claims against the county and the sheriff for $5,000.

After complying with the FTCA administrative prerequisites, Castro commenced the present action in October 1992, seeking $70,-000 in damages against the federal agents and the United States, jointly and severally, under the FTCA and *Bivens*.

### B. *The Motions To Dismiss*

In February 1993, defendants moved jointly to dismiss the complaint for failure to state a claim, or, in the alternative, for summary judgment, based on affidavits of Abrams, Daus, and Bologna. Bologna stated in his affidavit that he had received information from a confidential informant that heroin was being sold in the Amsterdam area, that Bologna had passed that information to DEA, and that DEA had relayed it to the Montgomery County sheriff's department. All of the affidavits stated that the local authorities took primary responsibility for the investigation. The federal agents were assigned to assist the local authorities.

According to the federal agents' affidavits, the local authorities decided that a raid would be conducted and that the confidential informant, wearing a wire, would enter the apartment where the narcotics were being sold and would signal the officers once he saw the heroin. The federal agents asserted (1) that the local officers had control over the investigation, including the decision to enter and search Castro's apartment; (2) that the duty of the federal agents during the raid was solely to remain outside the residence and observe the doors and windows; and (3) that the federal agents never entered Castro's apartment and had no input into the sheriff's targeting of her apartment. In addition to the federal agents' affidavits, the motion attached a purported affidavit in the name of the Montgomery County sheriff,

echoing the federal agents' description of the events and the local authorities' responsibility. This document, however, was unsigned and unexecuted. Although the motion included the representation that a signed and executed original would be forthcoming, apparently none was ever submitted.

Defendants' motion was also accompanied by a summary that was described as a statement of material facts pursuant to Local Rule 10(j), which requires a short, concise statement of the material facts as to which the moving party contends there is no genuine issue. The statement submitted by defendants, however, in addition to not being in a concise form suitable to permit the opposing party to respond as envisioned by that Rule, did not assert that the facts on which defendants relied either were not disputed or presented no genuine issue for trial.

In opposition to defendants' motions, Castro submitted an affidavit stating, *inter alia,* that a large number of persons had entered her apartment on the night in question; some of them wore clothing bearing indications that they were county officers; others wore dark jackets with white or yellow letters, and Castro believed the latter individuals were federal agents. She suggested that the forcible entry into her apartment by mistake had been unreasonably negligent, stating on information and belief that "the apartment in which drug trafficking is alleged to have occurred had been under surveillance for a month or longer." (Affidavit of Maria Castro dated April 1, 1993, ¶ 3.) Castro also stated that her requests of DEA and the sheriff's department for information had been ignored, and she requested more time in which to conduct discovery.

### C. *The District Court's Decision*

In a transcribed ruling dated October 12, 1993 ("Decision"), the district court granted defendants' motions to dismiss. The court stated that it would not resolve the question of whether or not the federal agents had entered Castro's apartment, but would instead dismiss the action under Rule 12(b)(6). Noting that, under the FTCA, claims of constitutional violations could not be maintained

against the United States, and common-law tort claims could not be maintained against the individual defendants, the court considered (a) whether the complaint stated a claim under the FTCA against the United States for nonconstitutional torts, and (b) whether the complaint stated constitutional claims against the individuals. It answered both questions in the negative.

The court noted that the FTCA provides that the United States may be liable for personal injury and property damage caused by the negligent or wrongful act or omission of its employee acting within the scope of his employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," 28 U.S.C. § 1346(b). The court thus looked to the law of New York. It stated that although the officers in the present case had no search warrant for Castro's apartment or for any other apartment, the circumstances were analogous to the mistaken entry of a claimant's apartment when officers did have a valid warrant for a different apartment. The court stated that under New York law, "if law enforcement officers act under a facially valid warrant that contains a mistaken address, the officers have limited immunity from liability for negligence." Decision at 4–5. The court stated that "[l]iability in such a case can only attach if the officers act in bad faith or use unreasonable conduct in acquiring or carrying out the warrant." Decision at 5 (citing *Kolko v. City of Rochester*, 93 A.D.2d 977, 461 N.Y.S.2d 650 (4th Dep't 1983)). The court ruled that since Castro had not alleged that the officers entered her apartment in bad faith, they, and derivatively the United States, were entitled to the state-law immunity:

> In this case the plaintiff has not alleged that the officers acted in bad faith or used unreasonable conduct. Rather, she has stated that solely through the negligence and carelessness of the defendants did their actions arise and were carried out in the entry of the wrong home. Therefore, without such allegations of bad faith or unreasonable conduct, the individual defendants could not be held liable for negli-

gence under New York law and so neither can the United States under the FTCA.

Decision at 5. The court found that the absence of a warrant did not make the present case materially different from *Kolko v. City of Rochester* because it found that there existed here probable cause and exigent circumstances for the entry:

> Now, in this case exigent circumstances did exist. The law enforcement officer[s] knew that the suspect was in the apartment they meant to enter, the informant saw the crime being committed, the sale of heroin was a grave offense and there was a possibility that suspects would have escaped if the officers had taken time to get a warrant.... Based on this information, it is logical for this Court to assume that the exigent circumstances supported the officers['] warrantless entry into the apartment. It is also logical for this Court to find such an entry to be as constitutionally valid as an entry conducted with a warrant. Because of this, the officers should be no more subject to liability for negligence than they would be if they had a warrant. So, under New York law, the officers could not be held liable for negligence. Therefore, under the FTCA ... the US could not be held liable for such negligence either. This warrants dismissal under Rule 12(b)(6) because the plaintiff has failed to state a valid cause of action against the United States....

Decision at 6–7.

Turning to the constitutional claims asserted against the individual defendants, the court decided that since Castro alleged that the defendants had acted negligently, those claims should be dismissed on the ground of qualified immunity:

> Plaintiff claims that the agents violated her right to be free from unreasonable searches and seizures when they allegedly entered her apartment, mistakenly believing ... it to be the site of a drug transaction. Defendants assert that they have qualified immunity because officials performing discretionary functions are immune from suit for damages unless the conduct in question violates clearly estab-

lished statutory or constitutional rights of which a reasonable person would have known....

.... Qualified immunity will protect the official unless, in the light of preexisting law, the unlawfulness is apparent....

In this case, as discussed previously, the defendant agents did have probable cause to enter the apartment where the drug transaction was taking place. Exigent circumstances made their entry into the correct apartment without a warrant valid under the 4th Amendment. Based on these exigent circumstances, the defendants entered what they thought was the correct apartment and it was reasonable for them to believe that they were validly doing so. They, unfortunately, entered the wrong apartment by mistake. However, even this mistake does not disturb their qualified immunity claim because it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present and in such cases those officials, like other officials who act in ways they reasonably believe to be lawful, should not be held personally liable.... Only where the situation is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost....

Because the agents in this case had a reasonable belief that their entry into the correct apartment would be supported by the contours of the 4th Amendment due to the exigent circumstances, their mistaken entry into the wrong apartment does not disengage the protection from liability secured by qualified immunity.

Decision at 8–9.

Judgment was entered dismissing all of Castro's claims. This appeal followed.

## II. DISCUSSION

▇▇▇ The district court correctly held both that the United States has not waived its sovereign immunity with respect to claims that its employees have committed constitutional torts, and that a claimant's exclusive remedy for nonconstitutional torts by a government employee acting within the scope of his employment is a suit against the government under the FTCA. *See generally Rivera v. United States,* 928 F.2d 592, 608–09 (2d Cir.1991); 28 U.S.C. § 2679(b)(1). It also correctly held that although the FTCA makes individual government employees immune from common-law tort claims for acts committed within the scope of their employment, it does not make them immune from claims of constitutional violations. *See, e.g., Carlson v. Green,* 446 U.S. 14, 20, 100 S.Ct. 1468, 1472, 64 L.Ed.2d 15 (1980); *Rivera v. United States,* 928 F.2d at 608.

We have several difficulties, however, with the court's decision to dismiss the nonconstitutional claims against the United States and the constitutional claims against the individuals. First, as to the nonconstitutional claims against the United States, the court applied a substantive standard other than the one required by the FTCA. Further, though deciding defendants' motions under Rule 12(b)(6), the court (a) went outside the allegations of the complaint, (b) instead of construing the complaint liberally in favor of the plaintiff, accepted at face value the assertions of the individual defendants, and (c) placed on Castro the burden of pleading with respect to a matter that is an affirmative defense.

### A. *The FTCA Claim Against the United States*

▇▇▇ With respect to tort claims as to which the United States has waived its sovereign immunity, the FTCA requires the court to apply the substantive law of the place where the event occurred. The statute allows

claims against the United States, for money damages, ... for injury or loss of property, or personal injury ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, *if a private person,* would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b) (emphasis added); *see also* 28 U.S.C. § 2674 (United States is liable with respect to claims allowable under FTCA "to the same extent as a private individual under like circumstances"); *Guttridge v. United States,* 927 F.2d 730, 731–34 (2d Cir. 1991); *Caban v. United States,* 728 F.2d 68, 73–75 (2d Cir.1984); *Proud v. United States,* 723 F.2d 705, 706 (9th Cir.) ("federal government's tort liability is co-extensive with that of a private individual under state law"), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984).

In the present case, in seeking to apply the substantive law of New York, the district court looked to *Kolko v. City of Rochester,* 93 A.D.2d 977, 461 N.Y.S.2d 650, a case that did not deal with "private person[s]" but rather dealt with public officials. *Kolko* concerned the limited immunity that police officers enjoy when carrying out their official duties in good faith. It did not deal with the liability to which a private individual would be subject if he broke into the home of another and caused personal injury or property damage. Whatever other immunities the relevant state law may confer upon a private individual, *see, e.g., Guttridge v. United States,* 927 F.2d at 731–34 (landowner immunity from . liability for negligent maintenance of land on which public is allowed for recreation), it is clear that private individuals do not possess the immunities of government officials. *See Wyatt v. Cole,* —— U.S. ——, —— - ——, 112 S.Ct. 1827, 1831–34, 118 L.Ed.2d 504 (1992).

 In a suit against the United States under the FTCA, the United States is not entitled to defend on the basis of any official immunity that its executive employees individually might possess. *See Rivera v. United states,* 928 F.2d at 608–09. To the contrary, the United States may be held liable "to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. In this case, those circumstances included whatever authority was vested in the defendants by the applicable law with respect to their assistance in the narcotics raid that led to this lawsuit. *See Caban v. United States,* 728 F.2d at 74 (where immigration officers performing border-control function committed allegedly tortious acts, liability of United States assessed "in light of the liability that New York would impose upon one having a privilege to detain a would-be entrant who did not satisfactorily establish his right to enter"); although qualified immunity will not immunize the United States from liability, that liability must be assessed in light of the liability that New York would impose upon a person having legal authority to participate in the narcotics raid at issue in this case.

Castro alleged in her complaint that the entry resulted from defendants' "negligent and wrongful" conduct, and there are questions of fact as to the reasonableness of the defendants' conduct during that search. Thus, Castro must be allowed to pursue her common-law tort claims against the United States.

B. *The Constitutional Claims Against the Federal Agents*

 The court's dismissal of the claims against the individual defendants on the ground that they have qualified immunity was flawed both procedurally and substantively. First, qualified immunity is an affirmative defense that a defendant has the burden of pleading in his answer. *See, e.g., Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736–37, 73 L.Ed.2d 396 (1982); *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980). A plaintiff, in order to state a claim of constitutional violation, need not plead facts showing the absence of such a defense. *See, e.g., id.; Oliver Schools, Inc. v. Foley,* 930 F.2d 248, 253 (2d Cir.1991). Thus, even if good faith were the test for qualified immunity, *see Harlow v. Fitzgerald,* 457 U.S. at 815–20, 102 S.Ct. at 2736–39 (proper standard is objective reasonableness, not subjective good faith), the court erred in dismissing, pursuant to Rule 12(b)(6), Castro's claims against the individual defendants on the ground that she had failed to plead that they acted in bad faith.

 Second, while defendants moved in the alternative for summary judgment, the granting of that relief would have been no more appropriate, given the posture of the

case and the substance of the affidavits. Although a defense of qualified immunity should ordinarily be decided "at the earliest possible stage in litigation," *Hunter v. Bryant,* 502 U.S. 224, ——, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991); *Anderson v. Creighton,* 483 U.S. 635, 646–47 n. 6, 107 S.Ct. 3034, 3042–43 n. 6, 97 L.Ed.2d 523 (1987), and it is a defense that often can and should be decided on a motion for summary judgment, *see, e.g., Hunter v. Bryant,* 502 U.S. at —— – ——, 112 S.Ct. at 536–37; *Harlow v. Fitzgerald,* 457 U.S. at 818, 102 S.Ct. at 2738, some limited and carefully tailored discovery may be needed before summary judgment will be appropriate, *see Anderson v. Creighton,* 483 U.S. at 646–47 n. 6, 107 S.Ct. at 3042–43 n. 6. Where the claimant's description of the events suggests that the defendants' conduct was unreasonable, and the facts that the defendants claim are dispositive are solely within the knowledge of the defendants and their collaborators, summary judgment can rarely be granted without allowing the plaintiff an opportunity for discovery as to the questions bearing on the defendants' claims of immunity. *See generally id.;* Fed.R.Civ.P. 56(f). Here, Castro represented that her attempts to obtain information from the federal defendants and the county sheriff had fallen on deaf ears, and she asked for an opportunity to conduct discovery. The court erred in taking the federal agents' affidavits at face value and denying discovery.

Third, on a motion for summary judgment on the ground of qualified immunity, the defendants bear the burden of showing that as to that defense there is no genuine issue of material fact to be tried. *See generally Robison v. Via,* 821 F.2d 913, 922–23 (2d Cir.1987). Here, though defendants submitted a statement that referred to Local Rule 10(j), they did not even assert that there was no genuine issue as to the facts they alleged. Further, the submission of an unsigned, unsworn, corroborating document in the name of the sheriff, with the representation that an executed original would be submitted, followed by the unexplained failure ever to submit an executed document, may raise a question as to whether the federal agents' de-

scription of the events and their responsibility for them was accurate.

■ Finally, even if the case had been procedurally ripe for a summary judgment motion on the ground of qualified immunity, the federal agents' affidavits, even taken at face value, did not suffice to establish their right to that defense. Though a mere mistake in the performance of an official duty may not deprive the officer of qualified immunity, that doctrine does not shield performance that either (a) was in violation of clearly established law, or (b) was plainly incompetent. *See, e.g., Hunter v. Bryant,* 502 U.S. at ——, 112 S.Ct. at 537 ("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986))). With respect to both the legal question and the matter of competence, there is a component of objective reasonableness to be assessed in the officials' actions. Thus, the doctrine shields officers from suit for damages if "'a *reasonable* officer could have believed'" his action "'to be lawful, in light of clearly established law and the information [he] possessed.'" *Hunter v. Bryant,* 502 U.S. at ——, 112 S.Ct. at 536 (quoting *Anderson v. Creighton,* 483 U.S. at 641, 107 S.Ct. at 3039–40 (emphasis ours)). Officials are "entitled to qualified immunity [when] their decision was *reasonable,* even if mistaken." *Hunter v. Bryant,* 502 U.S. at ——, 112 S.Ct. at 537 (emphasis added); *see also id.* (test is "whether the agents acted *reasonably* under settled law in the circumstances" (emphasis added)); *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994) ("probable cause exists even where it is based upon mistaken information, so long as the arresting officer was *reasonable* in relying on that information" (emphasis added)).

■ Here, defendants' affidavits did not proffer details from which either the doctrinal or the factual reasonableness of their actions would have been established. For example, though it was the federal agents' burden "to demonstrate exigent circumstances that overcome the presumption of

unreasonableness that attaches to all warrantless home entries," *Welsh v. Wisconsin,* 466 U.S. 740, 750, 104 S.Ct. 2091, 2098, 80 L.Ed.2d 732 (1984), their bare-bones affidavits did not provide information from which exigent circumstances could be found for entry into even the correct apartment. Bologna's affidavit stated that he had received and relayed a tip that heroin was being sold in the Amsterdam area; but it did not reveal whether the tip had been given hours, days, or weeks before the raid. Nor did the federal agents' affidavits reveal any details as to the information given by the informant, such as whether the apartment in question was a temporary or a relatively permanent sale site, or whether the drug dealer had posted lookouts. The affidavits did not provide any information suggesting that if the officers had taken the time to obtain a search warrant, flight or destruction of evidence was likely to occur in the interim. The affidavits simply stated that the officers planned to enter as soon as the informant signaled them that he had seen heroin in the apartment. We know of no authority for the proposition that exigent circumstances for a warrantless entry into a residence exist solely on the basis of a sighting of heroin therein. "[N]o exigency is created simply because there is probable cause to believe that a serious crime has been committed." *Welsh v. Wisconsin,* 466 U.S. at 753, 104 S.Ct. at 2099. Consequently, there are factual questions as to whether the officials could have had a reasonable belief that their actions with respect to the correct apartment were not in violation of clearly established law.

Further, there were factual questions as to whether targeting Castro's apartment was a mistake that bespoke plain incompetence. There was no indication in the affidavits as to what the confidential informant had told the officials to identify either the seller of the drugs or the apartment in which they were being sold. Nor was there any statement as to whether prior to the raid there had been any surveillance of the correct apartment. Castro asserted in her affidavit that the correct apartment had been under surveillance for a month; though she did not cite any supporting evidence, defendants made no effort to contradict that assertion.

For all of the above reasons, the dismissal of Castro's claims against the individual defendants was error.

■■ We also reject the federal agents' argument that the district court could properly have dismissed the complaint against them on the ground that it simply failed to state a claim of constitutional dimension. Defendants rely on cases such as *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), in which the Supreme Court held that a plaintiff does not assert a constitutional claim by alleging a merely *"negligent* act of an official causing unintended loss of or injury to life, liberty, or property," *id.* at 328, 106 S.Ct. at 663 (emphasis in original). The *Daniels* Court, emphasizing that the primary purpose of allowing damages for constitutional violations is to prevent "abuse of power," held that no constitutional claim was stated by the allegation that the plaintiff tripped over a pillow that defendant prison officials had negligently left on a prison stairway. *Id.* at 332, 106 S.Ct. at 665–66. Here, Castro's complaint in no way indicated either that the agents had probable cause to enter even the right apartment or that exigent circumstances would have justified their warrantless entry into that apartment. Construed liberally in her favor, *see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), the complaint alleged that the federal agents, acting without a search warrant or probable cause, entered and searched Castro's home, a potential abuse of power that rises above mere negligence. The district court properly did not dismiss the complaint for failure to state a claim of constitutional dimension.

## CONCLUSION

For the foregoing reasons, we vacate the judgment and remand to the district court for further proceedings not inconsistent with this opinion.