Dan D. SHAW, Plaintiff,

v.

James M. McCUSKER, Jr. and Joseph Faughnan, Defendants.

No. 3:96 CV 811(GLG).

United States District Court,
D. Connecticut.

July 23, 1998.

John R. Williams, Williams, Polan & Pattis, New Haven, CT, for Plaintiff.

John J. Kelly, Jr., Cantor Floman Russell & Gross, Orange, CT, for Defendants.

## MEMORANDUM DECISION

GOETTEL, District Judge.

In this section 1983[1] case, defendants move for summary judgment on qualified immunity grounds. Their statement of undisputed facts is not contested by the plaintiff, with a single exception.[2] Consequently, the following statements, which we quote verbatim, are accepted as undisputed.

At all times relevant to the complaint, Plaintiff Daniel Shaw was a selectman of the Town of Clinton.

At all times relevant to the complaint, Defendant James M. McCusker, Jr. was the first selectman of the Town of Clinton.

At all times relevant to the complaint, Defendant Joseph Faughnan was Clinton's Chief of Police.

In 1996, the Town of Clinton was considering purchasing a privately-owned vacant building on Killingworth Turnpike to give to the Henry Carter Hull Library. The Henry Carter Hull Library is a private foundation that receives town funds to operate. As a selectman, the plaintiff "was very questioning" of the whether the town should purchase the property for the library.

In late December 1996, the plaintiff telephoned Gary Cummings, the town librarian, to discuss the library budget. During the conversation, the plaintiff told Cummings that, if the library moved to the new location, the town would more closely scrutinize the library budget.[3] Later that same evening, the plaintiff received a telephone call from Steve Lillquist,[4] the president of the board of trustees of the Clinton library. Lillquist told the plaintiff that Cummings had called him and told him that the plaintiff was trying to intimidate him.

On January 10, 1997, another member of the library board of trustees, Harold Goberman, filed a complaint with Defendant Joseph Faughnan, the Clinton Chief of Police. Goberman told Defendant Faughnan that the plaintiff told both Cummings and Lillquist that "they should not continue to pursue the Rt 81 building for a library site

---

1. 42 U.S.C. § 1983.

2. The defendants state that plaintiff does not believe that the defendants did anything malicious in conducting the criminal investigation. (Defendants' Local Rule 9(c) Statement of Undisputed Facts ¶ 11). The plaintiff responds that he did not state that he believed the defendants lacked malice. Rather, he stated that he could not read their minds at the time they informed him that he was the target of a criminal investigation because of his statements as a selectman on the subject of the public library. (Plaintiff's Statement of Material Facts ¶ 4). The Supreme Court, in Crawford–El v. Britton, — U.S. —, 118 S.Ct. 1584, 1592, 140 L.Ed.2d 759 (1998), recently reconfirmed that "[e]vidence concerning the defendant's subjective intent is simply irrelevant" to the defense of qualified immunity. However, evidence of improper motive may be an essential element of a plaintiff's affirmative case, id., as in this case, where the plaintiff is alleging retaliation by the defendants for plaintiff's exercising his constitutional rights. When intent is an element of a constitutional violation, the primary locus is not on any possible animus directed at the plaintiff; rather, it is more specific, such as the deterrence of public comment on a specific issue of public importance. Id., 118 S.Ct. at 1594.

3. According to plaintiff's deposition testimony submitted in opposition to the motion for summary judgment, there were three issues surrounding the town's purchase of the building for the public library, which rendered this matter so controversial within the town: (1) whether the library needed a building that large; (2) whether the town should be spending public funds to buy a building for a private foundation; and (3) whether the town should promote moving a major traffic draw away from the center of town, where the existing library was located. (Plaintiff's deposition at 9). The plaintiff further testified that he called Mr. Cummings, for whom his first wife had worked for a number of years, to talk to him on a one-to-one personal basis concerning the inflammatory and mean-spirited rhetoric that was taking place concerning this matter. Id. at 15–16. Plaintiff testified that he called Mr. Cummings to see if he could prevail upon one of the proponents of the purchase to "tone the rhetoric down because it might impact adversely on the budget season coming up." Id. at 16. That individual was a member of the library board of trustees. Id.

4. WE are unsure of the correct spelling of this name and have simply quoted the defendants' statements. "Lillquist" and "Lilliquist" are the spellings in the defendants' Rule 9(c) Statement. In the excerpts of plaintiff's deposition provided by the defendants, plaintiff uses the spelling "Lilquist."

their [sic] budget with the town would be subject to scrutiny."

As chief of police, Defendant Faughnan is responsible for investigating reports of possible criminal violations. Defendant Faughnan believed the facts in Goberman's complaint, if true, would constitute the crime of coercion in violation of C.G.S. § 53a–192.

Defendant Faughnan assigned an officer to investigate the complaint.

In early January 1997, Defendant McCusker informed the plaintiff that he was under criminal investigation in an executive session of a Clinton Board of Selectmen's meeting.

The plaintiff then requested a meeting with Defendant Faughnan. At that meeting, Defendant Faughnan told the plaintiff that someone had filed a complaint against him and that he was being investigated for violation of Connecticut General Statute ¶ 53a–192. Defendant Faughnan did not threaten to arrest or prosecute the plaintiff.

On February 8, 1996, as part of the police investigation, Goberman gave a statement to the police in which he stated that "Shaw had apparently made comments to Gary Cummings, the head librarian, that the [sic] if the library continued to pursue the new bank building, the libraries [sic] town budget would be subject to scrutiny, or words to that effect." Goberman also stated that "Lillquist telephoned me at my residence and related that Shaw had also contacted him and made similar comments regarding the libraries [sic] budget."

Cummings told the police that Shaw telephoned him in early January 1996 to tell him that Shaw would "hate to see something happen to the libraries" [sic] budget because of this ("meaning their attempts to obtain the building.")[5] Cummings' con-versation with Shaw "made him feel uncomfortable as he felt this was an implied threat." Still, Cummings did not want to pursue the incident.

Lillquist also told the police that he did not want to pursue the matter.

The police did not pursue the investigation and it was closed on February 8, 1996. Shaw was not arrested or prosecuted as a result of the investigation.

Defendant McCusker informed the plaintiff that the criminal investigation was over during an executive session of another Board of Selectment meeting.

The criminal investigation received no publicity until the plaintiff filed his intent to sue the town of Clinton.

Defendants' Local Rule 9(c) Statement of Undisputed Facts ¶¶ 1–10, 12–18 (internal record citations omitted). In addition, the plaintiff has set forth three facts which he contends are material to the motion for summary judgment.[6]

The Board of Selectmen of the Town of Clinton, on which the plaintiff sat at the time of the events in question, had no authority to either pass or reject the library budget. That issue was within the exclusive jurisdiction of the Board of Finance, of which the plaintiff was not a member.

Defendant McCusker called for an executive session of the Board of Selectmen for the specific purpose of there informing the plaintiff in the presence of the other selectmen that he was under criminal investigation because of the plaintiff's statements.

As a result of being told that he was under criminal investigation for his statements concerning the library, the plaintiff was stunned and lost all desire to serve on the Board of Selectmen. From that point on, he always stopped and worried, before un-

---

**5.** The punctuation appears in this fashion in the 9(c) Statement.

**6.** The Local Rules do not call for a response to the plaintiff's opposing statement. Rule 9(c)2 merely requires the opposing party to submit a "statement of the material facts as to which it is contended that there exists a genuine issue to be tried." D.Conn.L.Civ.P. 9(c)2 (adopted June 14, 1996). Consequently plaintiff's facts may be dis-puted by the defendant. We note that this Rule was changed by the July 1, 1998 amendments to the Local Rules (which would not apply to this motion), such that now an opposing party is required to include in the Local Rule 9(c)2 statement, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue to be tried.

dertaking any activity as Selectman, whether he was going to get into trouble with the law as a result.

Plaintiff's Statement of Material Facts ¶¶ 1–3.

Based upon these facts, the defendants contend that there exist no genuine issues of material. fact as to their right to qualified immunity on plaintiff's claim that his rights to freedom of speech, association and petition were violated by the conduct of defendants.

### Discussion

■■■■ In a section 1983 case, a municipal officer may be shielded from liability in his individual capacity based on qualified immunity if his conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Shechter v. Comptroller of the City of New York,* 79 F.3d 265, 268 (2d Cir.1996). The burden of pleading and proving qualified immunity rests with the defendants. *Gomez v. Toledo,* 446 U.S. 635, 639–41, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). In determining whether an official is entitled to qualified immunity, the Court applies an objective standard, which looks at the state of the law at the time of the challenged conduct, and the objective legal reasonableness of the official's acts. *Crawford-El v. Britton,* —— U.S. ——, 118 S.Ct. 1584, 1593, 140 L.Ed.2d 759 (1998) (internal citations and quotations omitted).

The Supreme Court views qualified immunity as "ordinarily" being a question of law that should be determined when possible on a motion for summary judgment. *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991); *see also Castro v. United States,* 34 F.3d 106, 112 (2d Cir.1994). However, caught between a desire to eliminate the need for government officials to defend frivolous actions and the desire not to have summary judgment granted if there is any possible material issue of fact, the appellate courts have taken a somewhat erratic approach in civil rights cases toward the granting of summary judgment on qualified immunity grounds. *See generally* 1B Martin A. Schwartz & John E. Kirklin, *Section 1983*

*Litigation* § 9.34 (3d ed.1997). Of particular importance to this case, the Second Circuit has, as with other aspects of summary judgment, severely limited the ability of the trial courts to act. *See Castro,* 34 F.3d at 112; *Oliveira v. Mayer,* 23 F.3d 642, 649 (2d Cir. 1994) (holding that the immunity issue should be decided by the court only where the facts concerning its availability are undisputed; otherwise, jury consideration is required), *cert. denied,* 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995); *Frank v. Relin,* 1 F.3d 1317 (2d Cir.), *cert. denied,* 510 U.S. 1012, 114 S.Ct. 604, 126 L.Ed.2d 569 (1993); *Warren v. Dwyer,* 906 F.2d 70, 74 (2d Cir.), *cert. denied,* 498 U.S. 967, 111 S.Ct. 431, 112 L.Ed.2d 414 (1990) (noting *in dicta* that the pretrial resolution of the qualified immunity defense may be thwarted by a factual dispute).

Here, the parties do not dispute that the rights asserted by plaintiff—to be free from adverse governmental action taken in retaliation for the exercise of free speech—were clearly established constitutional rights. Instead, the defendants argue, in the case of Police Chief Faughnan, that his actions in investigating a complaint from a prominent community member were objectively reasonable; and, in the case of First Selectman McCusker, that his actions in informing the plaintiff that he was under criminal investigation did not infringe on plaintiff's constitutional rights.

■■■■ In cases involving clearly established rights, the entitlement to qualified immunity generally turns on the particular facts of the case. *Robison v. Via,* 821 F.2d 913, 921 (2d Cir.1987). A court, however, may still decide the qualified immunity issue on a motion for summary judgment, if the defendant can prove that "no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff[ ], could conclude that it was objectively unreasonable for the defendants to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995) (citations and internal quotations omitted). *See*

*also Crawford–El,* 118 S.Ct. at 1594. Generally, a government or municipal officer's actions are considered objectively unreasonable "when no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon,* 66 F.3d at 420–21.

It is clear that, if only a legal issue is presented, the defendant's summary judgment motion may be granted. It is equally clear that, if there are material issues of fact as to the claim of qualified immunity, summary judgment must be denied. Unfortunately, many claims of qualified immunity raise mixed questions of law and fact. One treatise has suggested that "[w]hen the resolution of a claim of qualified immunity is dependant upon factual issues that are in dispute, a court should not attempt to force the immunity issue into the question of law cubicle when it rightfully belongs in the fact-finding arena." 1B Schwartz & Kirklin, *supra* ¶ 9.34, at 497.

■ From the factual scenario outlined above, the defendants contend that they are entitled to summary judgment relying principally upon *Mozzochi v. Borden,* 959 F.2d 1174 (2d Cir.1992). *Mozzochi,* however, is distinguishable from the instant case. In that case, the Second Circuit found that the plaintiff had no constitutionally protected right to be free from a criminal prosecution supported by probable cause. In the instant case, however, plaintiff's constitutional right is not at issue. The plaintiff, for his part, claims that the Second Circuit's later decision in *Johnson v. Bax,* 63 F.3d 154, 159 (2d Cir.1995), seriously limits the *Mozzochi* decision. We do not see a conflict between the two cases. The *Johnson* case stands for the proposition that, although the plaintiff's acceptance of an adjournment in contemplation of dismissal barred his claims for false imprisonment and false arrest, it did not prohibit him from presenting an independent First Amendment claim involving freedom of speech. The *Johnson* case is, however, helpful to the plaintiff in finding that issues of fact of a rather insubstantial nature were sufficiently material to prohibit the granting of summary judgment. In that regard, the plaintiff also relies upon an even more recent Second Circuit case, *Gummo v. Village of*

*Depew,* 75 F.3d 98, 107 (2d Cir.), *cert. denied,* 517 U.S. 1190, 116 S.Ct. 1678, 134 L.Ed.2d 780 (1996), in which the Court held that:

> If, as to the issue on which summary judgment is sought, there is *any evidence* in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.

*Id.* at 107 (emphasis added). With these principles in mind, we evaluate the foregoing established or claimed facts.

Police Chief Faughnan was investigating a possible violation of Connecticut General Statute § 53a–192 which provides:

### Coercion: Class A misdemeanor or class D felony

(a) A person is guilty of coercion when he compels or induces another person to engage in conduct which such other person has a legal right, to abstain from engaging in, or to abstain from engaging in conduct in which such other person has a legal right to engage, by means of instilling in such other person a fear that, if the demand is not complied with, the actor or another will: (1) Commit any criminal offense; or (2) accuse any person of a criminal offense; or (3) expose any secret tending to subject any person to hatred, contempt or ridicule, or to impair any person's credit or business repute; or (4) take or withhold action as an official, or cause an official to take or withhold action.

We note that the only portion of this criminal statute which could possibly be implicated in this case turns upon a person's being compelled or induced "to abstain from engaging in conduct in which such other person has a legal right to engage, by means of instilling in such other person a fear that, if the demand is not complied with the actor or another will ... (4) take or withhold action as an official, or cause an official to take or withhold action." The first defect in the police investigation was that they did not have a complaint from the persons who had reportedly been the victims of coercion; rather they were dealing with a hearsay report (indeed, a double hearsay report, in part) from one Harold Goberman. The reports of inves-

tigation attached to the affidavit of defendant Faughnan state that the persons who had received the telephone calls, Lillquist and Cummings, initially refused to speak to the police and did not wish to see any criminal complaint pursued.

We next observe that the Connecticut statute on coercion requires an official to take or withhold action or cause an official to take or withhold action. If the Selectmen of Clinton, of which the plaintiff was one, had no control over the library budget (as plaintiff contends), the plaintiff would not seem to have been able to take or withhold action on the budget, and there is no allegation that he threatened to cause an any other official to take or withhold any such action. Indeed, reading the facts in a light most favorable to the plaintiff as we are required to do, the plaintiff only expressed concern to Mr. Cummings, the librarian, that the hostile and mean-spirited rhetoric by a library board member could adversely impact the budgetary process. This statement could reasonably be interpreted to mean that plaintiff was attempting to alert Cummings to the fact that town voters might put pressure on the Finance Board to disapprove budget requests from this library board, a helpful warning rather than any type of coercion.

These facts raise at least a genuine issue of material fact as to whether it was objectively reasonable for the defendant Faughnan to even commence an investigation into criminal coercion by the plaintiff, particularly given plaintiff's lack of control over, or involvement in, the budgetary process. Even if the Board of Selectmen did have some involvement in the budgetary process, we tend to view plaintiff's statement as being no more than political jawboning.

As to plaintiff's claims against defendant First Selectman McCusker, we find that the qualified immunity issue is intertwined with the alleged constitutional violation. If McCusker's comments to the plaintiff and his fellow selectmen at the specially-called meeting regarding a criminal investigation of plaintiff were made to inhibit or deter plaintiff's exercise of this right to free speech, there may have been be a violation of plaintiff's constitutional rights, and defendant McCusker would not be entitled to qualified immunity. Again, we find genuine issues of material fact in that regard.

While we view the complaint of the plaintiff against the defendants as something of a tempest in a political teapot, under the rather stringent limitations placed upon the District Courts in this Circuit with respect to summary judgment, we must **DENY** the motion for summary judgment (Doc. No. 15).