371 F.3d 110
 Yvonne MOORE, Plaintiff-Appellee,
v.
Angela VEGA, State Parole Officer and A. Lavinio, Defendants-Appellants,
George E. Pataki, in his official capacity as Governor of the State of New York, Brion D. Travis, in his official capacity as Chairman of the Division of Parole of the State of New York, and John Doe 1 Thru John Doe, Defendants.
 Docket No. 02-9209.
 United States Court of Appeals, Second Circuit.
 Argued December 5, 2003.
 Decided June 10, 2004.
 
 COPYRIGHT MATERIAL OMITTED Daniel J. Chepaitis, Assistant Solicitor General, New York, New York (Eliot Spitzer, Attorney General of the State of New York, Michael Belohlavek, Deputy Solicitor General, New York, New York, of counsel), for Defendants-Appellants Angela Vega and Alex Lavinio.
 Edward A. Roberts, Brooklyn, New York, for Plaintiff-Appellee Yvonne Moore.
 Before: CARDAMONE, SACK, and GIBSON*, Circuit Judges.
 CARDAMONE, Circuit Judge.
 
 
 1
 This appeal concerns a late-at-night warrantless search of plaintiff's house by state parole officers. The parole officers searched plaintiff's residence based upon mistaken information. As a result of that invasion plaintiff Yvonne Moore brought suit against the defendant parole officers and others she alleges were responsible for violating her Fourth Amendment rights. The householder should not in this case recover merely because the searching officers erred.
 
 
 2
 Defendants Angela Vega and Alex Lavinio are both New York State parole officers. They appeal from a September 10, 2002 order of the United States District Court for the Eastern District of New York (Garaufis, J.), which denied their motion for summary judgment in an action brought against them by plaintiff Yvonne Moore. Moore filed suit under 42 U.S.C. § 1983 claiming her Fourth Amendment right to be free from an unreasonable search was violated when defendants entered her home without a search warrant to search for an absconded parolee who they had been informed was residing there.
 
 
 3
 We vacate the district court's order and remand the case for it to grant summary judgment in favor of defendants because it was objectively reasonable for the parole officers to believe that their actions were not in contravention of the Fourth Amendment.
 
 BACKGROUND
 Events of January 29, 1998
 
 4
 Officer Vega was assigned to Rondell Moore, a/k/a Kurt Moore, an absconded parolee for whom a parole violation warrant had been issued. On January 29, 1998 Officer Vega became aware from information contained in the parolee's folder that he was presently residing at an address in Brooklyn, New York. She verified the information with the agent from the Federal Bureau of Alcohol, Tobacco and Firearms (ATF), who had provided the New York State Division of Parole with the address. The agent confirmed the information in a telephone call in which he indicated he remembered Moore's name, even though he was not aware of the status of the parolee's case.
 
 
 5
 As a result of this knowledge, at 11:45 p.m. on January 29 Officers Vega and Lavinio, along with five other state parole officers, went to the Brooklyn address for the purpose of finding and arresting Rondell Moore pursuant to the parole violation warrant. The officers rang the doorbell repeatedly and knocked loudly, rousing plaintiff and her daughter, who had both been asleep, and bringing them to the door. Through the door's window they saw seven officers outside and heard one of them say "It's the police, open the door." Plaintiff opened the door and Officers Vega and Lavinio went inside. When plaintiff and her daughter asked what they wanted, defendants answered that they were looking for an absconded parolee named Rondell Moore and were going to search the house for him. They produced no search warrant.
 
 
 6
 Plaintiff or her daughter informed defendants that no one by that name lived in their house, and pointed out Monclear Rhodil Moore, plaintiff's husband, who was asleep in the living room. Defendants realized that Rhodil Moore, who was an ill, elderly man, was not the person for whom they were looking. Plaintiff's daughter volunteered that she had a brother named Kurt Moore, but that he did not live there. Kurt Moore was a name used as an alias by the absconded parolee for whom defendants were searching. Upon gaining this information, defendants proceeded to search the house. At the beginning of their search they came across a picture of Kurt Moore that resembled the parolee at a younger age. After continuing their search, they uncovered nothing further regarding the parolee.
 
 
 7
 When the officers' search was complete, plaintiff's daughter showed them a different picture of her brother Kurt Moore that Officers Vega and Lavinio agreed did not in any way resemble the parolee. At this point, defendants realized they had been provided with incorrect information by the ATF, apologized to the plaintiff and her family, gave them their business cards so that they could lodge a complaint, and left the residence with the other officers who had accompanied them.
 
 The Instant Action
 
 8
 In April 1999 plaintiff Moore brought the instant action for damages pursuant to 42 U.S.C. § 1983, alleging violations of her First, Fourth, Fifth, Ninth, Thirteenth, and Fourteenth Amendment rights by New York State Governor George Pataki, Chairman of the Division of Parole of the State of New York Brion Travis, and Parole Officers Vega and Lavinio. Subsequently plaintiff voluntarily withdrew her claims against Governor Pataki and Commissioner Travis. On April 26, 2002 defendant officers moved for summary judgment. The district court granted summary judgment against plaintiff on all her causes of action, except for her Fourth Amendment claim.
 
 
 9
 The court denied defendants' motion with respect to the Fourth Amendment cause of action, holding that triable issues of fact regarding the legality of the search precluded summary judgment, and also ruled that the parole officers had not established entitlement to qualified immunity. The court based its conclusion on the fact that plaintiff had not consented to the search of her home. It did not address the special circumstances presented by the fact that defendant parole officers were searching for an absconded parolee in a place that they believed he would be found.
 
 DISCUSSION
 I The Applicable Law
 
 10
 We review de novo a district court's decision denying a defendant government official's motion for summary judgment based on qualified immunity. Cerrone v. Brown, 246 F.3d 194, 198 (2d Cir.2001). The threshold inquiry in our consideration of a qualified immunity defense is to determine whether the actions complained of by the plaintiff rise to the level of a deprivation of a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Holcomb v. Lykens, 337 F.3d 217, 220 (2d Cir.2003). If we conclude that the plaintiff was deprived of a constitutional right our analysis turns to whether the defendant officers are entitled to qualified immunity.
 
 
 11
 There are two ways government officials can show they are entitled to qualified immunity arising from their discretionary actions. First, they are immune from liability if their conduct does not violate "clearly established" statutory or constitutional rights the existence of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Cerrone, 246 F.3d at 199. In other words, the unlawfulness of the officials' actions must be apparent to support a viable claim. Townes v. City of New York, 176 F.3d 138, 144 (2d Cir.1999). Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established. Id.
 
 
 12
 Second, government officials will be immune if they can establish that it was objectively reasonable for them to believe their actions were lawful at the time. Cerrone, 246 F.3d at 199. That is to say, government officials enjoy immunity from liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); see also Castro v. United States, 34 F.3d 106, 112 (2d Cir.1994).
 
 
 13
 In a damages action asserting an illegal search, "[t]he relevant question ... is ... whether a reasonable officer could have believed [the] search to be lawful, in light of clearly established law and the information the searching officers possessed." Anderson, 483 U.S. at 641, 107 S.Ct. 3034; see also Castro, 34 F.3d at 112 ("Officials are entitled to qualified immunity when their decision was reasonable, even if mistaken." (emphasis in original)); accord Butz v. Economou, 438 U.S. 478, 507, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (stating that federal officials are shielded by qualified immunity from mere mistakes in judgment regardless of whether the mistake is one of fact or law).
 
 II The Constitutional Right
 
 14
 The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause ... particularly describing the place to be searched, and the persons or things to be seized." Absent certain exceptions to the warrant requirement, a warrantless search is per se unreasonable. See Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).
 
 
 15
 The Supreme Court set out a particular exception when it held that a state's operation of a probation program "presents `special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." Griffin v. Wisconsin, 483 U.S. 868, 873-74, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). The Court based this view on its conclusion that probationers do not enjoy the absolute liberty to which the average citizen is entitled, but instead only enjoy a conditional liberty dependent upon their adherence to special probation restrictions. Id. at 874, 107 S.Ct. 3164. Accordingly, probationers can be subjected to burdens upon their privacy that would be unconstitutional were they applied to the general citizenry, as long as those burdens are imposed pursuant to a regulation that satisfies the Fourth Amendment's reasonableness requirement. See id. at 873, 107 S.Ct. 3164.
 
 
 16
 The Supreme Court and this Circuit have extended this analysis to parolees as well as probationers. See Morrissey v. Brewer, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (holding in the context of a due process claim, that parolees enjoy only conditional liberty); United States v. Thomas, 729 F.2d 120, 123 (2d Cir.1984) (holding that parolees enjoy only conditional liberty in the context of a Fourth Amendment claim); accord United States v. Grimes, 225 F.3d 254, 258 (2d Cir.2000) (per curiam) (holding, after the occurrence of the events at issue here, that parole justifies at least the same measure of departures from traditional Fourth Amendment requirements as probation, and probably more, since parolees enjoy even less of the average citizen's freedom than probationers). A parolee is in the legal custody of his parole officer whose duty it is to monitor the parolee's observance of the conditions of parole. N.Y. Exec. Law § 259-i(2)(b). This unique relationship that exists between a parole officer and a parolee accounts for the parolee's diminished expectation of Fourth Amendment protections. See Thomas, 729 F.2d at 123 (discussing parolees' diminished Fourth Amendment protections). In Griffin, the Supreme Court held that an alleged "special needs" search must conform to the relevant state rule and this rule must pass constitutional muster. 483 U.S. at 875, 107 S.Ct. 3164; accord Grimes, 225 F.3d at 258-59. New York law provides: the question to be answered is "whether the conduct of the parole officer was rationally and reasonably [connected] to the performance of the parole officer's duty." People v. Huntley, 43 N.Y.2d 175, 401 N.Y.S.2d 31, 371 N.E.2d 794, 796 (1977). In other words, the conduct in question must be rationally related in the circumstances to the parole officer's duty. See id. at 797 (establishing New York state rule governing the determination of whether a parole search was unconstitutional). Based on the principles set out in Griffin and Thomas, the New York state rule clearly satisfies the Fourth Amendment's reasonableness requirement, since there is a reasonableness requirement embedded within the rule itself. Accord Grimes, 225 F.3d at 259 & n. 4.
 
 
 17
 It is clear from these decisions that if plaintiff were a parolee and defendants' actions were rationally and reasonably connected to their duties as parole officers, there would be no violation of a clearly established constitutional right, and plaintiff's claim would fail. However, our analysis of the "special needs" doctrine depended in some measure on the diminished liberty interests enjoyed by parolees. Because plaintiff is not a parolee, she cannot be subjected to the same burdens upon her privacy, and the departures from the usual warrant and probable-cause requirements allowed with respect to parolees are not justified for her. Thus, because defendants allege no other exception to the warrant requirement, their warrantless search of plaintiff's home was per se unreasonable, and constituted a violation of her clearly established Fourth Amendment right to be free from unreasonable searches and seizures. Nevertheless, defendants will still be entitled to summary judgment if they can prove they are entitled to qualified immunity because their actions were nonetheless reasonable.
 
 III Reasonableness of Defendants' Actions
 
 18
 The remaining issue in this case, therefore, is whether, in light of clearly established law and the information they possessed, the defendants could have reasonably believed their search of plaintiff's home to be lawful. Defendants argue that it was objectively reasonable for them to believe the search was consistent with the Fourth Amendment rights of the plaintiff. They contend the information they had made it reasonable for them to believe they were conducting a lawful search of a parolee's residence, and that even though that information turned out to be incorrect, qualified immunity still protects them from liability since their misapprehension was a reasonable mistake of fact.
 
 
 19
 First, there is no clearly established law stating that parole officers violate the Fourth Amendment rights of parolees to be free from unreasonable searches if the officers do not first obtain a search warrant based on probable cause before searching a parolee's residence. In fact, as set out in the previous section, the precedents plainly provide that parole systems are governed by the "special needs" doctrine, and that New York State's parole regulations, requiring that a search of a parolee's residence bear a rational relation to the duties of the parole officers, satisfy the reasonableness requirement inherent in that doctrine.
 
 
 20
 A parole officer has legal custody of the parolee to whom he is assigned, which imposes on the officer a duty to monitor that parolee's adherence to the terms of his parole. Thomas, 729 F.2d at 123. Officer Vega's action — searching for an absconded parolee in what she believed to be his residence in an attempt to bring him back into custody in accordance with a parole violation warrant — was unquestionably rationally related to her duty to supervise her parolee. Further, defendants state, and plaintiffs do not dispute, that their search complied with all of the New York State Division of Parole's rules and regulations. Thus, since the established law allows parole officers to conduct searches of the homes of parolees without probable cause or a warrant where those searches are related to the duties of the parole officers, and since it is clear that in this case defendants were fulfilling their duty to apprehend an absconded parolee in accordance with a parole violation warrant, a reasonable officer, in these circumstances, could have believed that this search was consistent with the Fourth Amendment.
 
 
 21
 Moreover, defendants believed they were entering the residence of an absconded parolee. If such belief was reasonable, qualified immunity protects them from liability, even if that belief was mistaken. Ehrlich v. Town of Glastonbury, 348 F.3d 48, 60-61 (2d Cir.2003) (police officers could have believed that warrantless entry based on third-party consent was lawful given conservator's letter granting permission to use force to enter).
 
 
 22
 Officer Vega was in possession of information she had received from the ATF that the absconded parolee was residing at plaintiff's address. She confirmed this information by telephone before acting on it. Information received from a law enforcement source may properly be relied on in the monitoring of convicted individuals released on probation or parole. Cf. United States v. Reyes, 283 F.3d 446, 460 (2d Cir.) (holding that information received from the DEA is properly taken into account when determining whether a home visit to monitor compliance with the conditions of supervision is necessary), cert. denied, 537 U.S. 822, 123 S.Ct. 106, 154 L.Ed.2d 31 (2002).
 
 
 23
 In addition, a mistake while engaging in the performance of an official duty — assuming one could characterize Officer Vega's reliance on this information as a mistake — does not deprive a governmental officer of immunity: qualified immunity protects that officer unless his performance was in violation of clearly established law, or was plainly incompetent. Castro, 34 F.3d at 112. It was not plainly incompetent for defendants to rely on information provided by a federal law enforcement agency that Officer Vega later confirmed with the agent who provided it.
 
 
 24
 Our conclusion that Officer Vega could reasonably rely exclusively on the information provided to her by the ATF agent arises from our awareness that this is not a situation where the officer must obtain information that rises to the level of probable cause to justify the issuance of a search warrant. Instead it brings into play what we and the Supreme Court recognize as the rules controlling the operation of a state parole system that presents a special need for the exercise of supervision to assure that parole restrictions are observed, under circumstances where the state system itself has been held to meet the reasonableness requirements of the special needs doctrine. As a consequence, we do not require the same level of investigation and corroboration required to establish probable cause.
 
 
 25
 Finally, plaintiff's contention that the defendants should have left her home when they realized that her husband, Rhodil Moore, was not the absconded parolee for whom they were searching cannot overcome the fact that the information defendants had received from ATF revealed that the parolee operated under the alias Kurt Moore. When plaintiff's daughter told defendants that plaintiff had a son named Kurt Moore, it was defendants' obligation to insure plaintiff's son was not the parolee they were seeking before they left the premises. As soon as defendants saw a picture proving to them that plaintiff's son and the parolee were not the same person, the officers left. Defendants' reasonable belief that this was the parolee's residence therefore extended until they were presented with convincing evidence that the information they had relied upon was incorrect.
 
 CONCLUSION
 
 26
 Accordingly, for the reasons stated, defendants are entitled to qualified immunity. The district court erred as a matter of law when it denied defendants' motion for summary judgment based on that doctrine. Its order is vacated and the case remanded for the entry of summary judgment in favor of defendants on all claims.
 
 
 27
 Vacated and remanded.
 
 
 
 Notes:
 
 
 *
 Honorable John R. Gibson, United States Court of Appeals for the Eighth Circuit, sitting by designation